**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| TOMI TRANCHITA,<br><br>         Plaintiff,<br><br>v.<br><br>KWAME RAOUL, State of Illinois Attorney General, in his individual capacity as the official decisionmaker for the office of the Attorney General; COLLEEN CALLAHAN, Director of the Illinois Department of Natural Resources, in her individual capacity as the official decisionmaker for the Illinois Department of Natural Resources; JOHN FISCHER, Legal Counsel for the Illinois Department of Natural Resources, in his individual capacity as a decisionmaker for legal matters for the Department; JOSHUA MOOI, Conservation Police Sergeant, in his individual capacity as an official decisionmaker for the law enforcement division of the Illinois Department of Natural Resources. [1]<br><br>         Defendants. | CASE NO.<br><br><br>**42 U.S.C. § 1983 VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, DECLARATORY AND INJUNCTIVE RELIEF** |

      Plaintiff Tomi Tranchita, by and through counsel, hereby sues KWAME RAOUL, State

of Illinois Attorney General, in his individual capacity as the official decisionmaker for the office

of the Attorney General; COLLEEN CALLAHAN, Director of the Illinois Department of

Natural Resources, in her individual capacity as the official decisionmaker for the Department of

---

[1] "Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the State.'" *Will v. Michigan Dep't of State Police*, 491 U.S. 58, at 71 n.10 (1989) (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).

Natural Resources; JOHN FISCHER, Legal Counsel for the Illinois Department of Natural Resources, in his individual capacity as a decisionmaker for legal matters for the Department of Natural Resources; JOSHUA MOOI, Conservation Police Sergeant, in his individual capacity as an official decisionmaker for the law enforcement division of the Illinois Department of Natural Resources, for declaratory relief and a preliminary and permanent injunction, and states:

## JURISDICTION AND VENUE

1.       This action arises under Article I, Section 8, Clause 3 of the United States Constitution, as well as 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 2201 and 2202.

2.       Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because all defendants are residents of this State and one or more reside in this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district.

3.       This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 (Federal Question) and 28.U.S.C. § 2201 and 2202 (Declaratory Judgment Act).

4.       This Court has authority to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

5.       Tomi Tranchita at all times relevant hereto, is a citizen of the United States and a resident of Tinley Park, Cook County, Illinois.

6.       Kwame Raoul is a Defendant in this lawsuit.  He is a public official and is the State of Illinois' Attorney General.  He acted and is acting under color of state law in violation of federal law.  He is being sued in his individual capacity, under *Ex parte Young*, and is being sued only for prospective relief to obtain declaratory and injunctive relief for ongoing violations of federal law.  He has a connection with the policy being challenged, and he is violating Tranchita's

clearly established rights by denying her possession of Luna (a coyote rescued as an orphaned coyote pup in 2006) by enacting, maintaining, and enforcing a policy requiring only Tranchita to hold a Hound Running Area permit.

7.    Colleen Callahan is a Defendant in this lawsuit.  She is a public official and is the Director of the Illinois Department of Natural Resources ("IDNR").  She is being sued in her individual capacity, under *Ex parte Young*.  She acted and is acting under color of state law and is being sued only for prospective relief to obtain declaratory and injunctive relief for ongoing violations of federal law.  She has a connection with the policy being challenged and she is violating Tranchita's clearly established rights by denying her possession of Luna by enacting, maintaining, and enforcing a policy requiring only Tranchita to hold a Hound Running Area permit.

8.    John Fischer is a Defendant in this lawsuit.  He is a public official and is Illinois Department of Natural Resources' legal counsel.  He acted and is acting under color of state law and is being sued in his individual capacity, under *Ex parte Young*.  He is being sued only for prospective relief to obtain declaratory and injunctive relief for ongoing violations of federal law. He has a connection with the policy being challenged.  He is violating Tranchita's clearly established rights by denying her possession of Luna by enacting, maintaining, and enforcing a policy requiring only Tranchita to hold a Hound Running Area permit.

9.    Joshua Mooi is a Defendant in this lawsuit.  He is a public official and is an Illinois Department of Natural Resources' Conservation Police Sergeant.  He acted and is acting under color of state law and is being sued in his individual capacity, under *Ex parte Young*.  He is being sued only for prospective relief to obtain declaratory and injunctive relief for ongoing violations of federal law.  He has a connection with the policy being challenged.  He is violating

Tranchita's clearly established rights by denying her possession of Luna by enacting, maintaining, and enforcing a policy requiring only Tranchita to hold a Hound Running Area permit.

## FACTUAL ALLEGATIONS

### I.    Background on Tranchita and Her Coyotes

10.    Until the brutal raid and seizure by Illinois Department of Natural Resources ("IDNR") on April 24, 2019, Tomi Tranchita's four coyotes (Luna, Sandy, Bella, and Peytah) were alive, happy, and healthy.

11.    In 2006 Tranchita began to care for three sick and orphaned coyote pups named Luna, Sandy, and Frodo.[2]  These pups were given to her by an organization called Wildlife Guardians/the SAFE Project.  In 2008 Tranchita began to care for another coyote pup named Bella.  Bella was rescued by a third-party from an abusive situation.  In 2015, Peytah was rescued by Tranchita from a coyote inappropriate situation.

12.    Until the day of the raid and seizure on April 24, 2019, Plaintiff Tomi Tranchita had devoted more than thirteen years of her life taking care of four abused and abandoned coyotes, Luna (now 14 years old), her brother Sandy (13 years old at time of death), Bella (11 years old at time of death) and Peytah (4 years old at time of death), by nursing them back to health and providing a nurturing and protective environment for these coyotes.  Luna, Sandy, Bella, and Peytah thrived under Tranchita's care. Nurturing coyotes suited her.  The experience also made her acutely aware of how coyotes are misunderstood and villainized by the public, especially in urban areas.  It was not long until Tranchita realized her true calling and mission in life, which is

_____

[2] Frodo passed away in 2012 from a reaction to flea medication.

caring for, and educating the public about coyotes, and she stepped on that path without hesitation**.**

13.　　Tranchita had her female coyotes (Luna and Bella) surgically sterilized.  She never bred her coyotes, or any other coyotes, and has never desired to breed coyotes.  She invested over $25,000.00 in special designed escape-proof, USDA-approved, enclosures, and educated the public with programs about coyote behavior and peaceful coexistence to lessen coyote/human conflicts.  She worked for hours every day with the four coyotes to ensure they remained calm and were appropriate ambassadors for public viewing under her USDA exhibitor's license.  Tranchita was a responsible steward of these rescued coyotes, and there were never any complaints about her care of them.  She worked two jobs to fund the care of the coyotes and to maintain their habitat, invested an additional $50,000 in her rescue and educational efforts over 13 years, and passed every annual surprise USDA inspection with no infractions.  She never had any of her coyotes escape or bite anyone, built relationships with local hunters, who regularly donated meat for the coyotes, and fed the coyotes well and provided them environmental enrichment.  Tranchita created an exceptional refuge for a few truly fortunate, rescued coyotes and a rich educational program for the public.  Tranchita's coyotes were deemed non-releasable by USDA Veterinarians Ken Kerstein and Dawn Barksdale, and by Tranchita's personal veterinarian, Kate Ball, DVM.

**II.　　In 2011, Illinois Department of Natural Resources ("IDNR") Instructs Tranchita to Obtain a Fur-bearing Mammal Breeder Permit**

14.　　In 2011, Illinois Department of Natural Resources ("IDNR") Conservation Officers Ron O'Neal and Suzanne Klemme, Cook County Animal Control Officer Frank Pierson, and Tinley Park Animal Control Officer Ruby Wilson, arrived at Tranchita's property in Tinley Park,

Illinois and viewed Tranchita's coyotes in their escape-proof enclosures and viewed her USDA license.

15.     During that 2011 inspection, Officer Ron O'Neal informed Tranchita that IDNR did not have an exact permit applicable to her situation, but that she was required to possess a Fur-bearing Mammal Breeder permit (520 ILCS 5/3.25) to possess coyotes, and that once she held a Fur-bearing Mammal Breeder permit she would be in compliance with state law.  Specifically, he stated to Tranchita that IDNR did not have an appropriate permit for refuges.  After searching his rule book for an hour, he told Tranchita "just buy the fur bearing permit and you're good."

16.     In 2011 when IDNR inspected her property, IDNR Conservation Officer Ron O'Neal had been employed by IDNR, as a Conservation Police Officer, for at least seven years.[3]

17.     Although Tranchita found it peculiar that she was required to obtain a Fur-bearing Mammal Breeder permit even though she was not breeding coyotes – and she informed the public officials who were present that day that she was not a breeder, had no intention of breeding coyotes, was not killing animals to harvest their fur, was not using the coyotes or her facility for any commercial purposes, and was a USDA-licensed wildlife educator – she decided to comply with the demand for a breeder permit because she had no choice if she wished to retain possession of the four coyotes she had rescued in 2006 and 2008.

18.     The outcome of this 2011 IDNR inspection was that IDNR, Cook County Animal Control, and Tinley Park Animal Control told Tranchita that they were satisfied with the coyotes healthy condition and the level of care and escape proof enclosures that contained the educational and non-releasable coyotes.

---

[3] See IDNR publication March 5, 2005"Outdoor Illinois" at page 7, available at, https://www2.illinois.gov/dnr/OI/Documents/March05SantaFePrairie.pdf#search=ron%20o%27n eal

19.      Tranchita held the annual Fur-bearing Mammal Breeder permit for the following years (1) 2011-2012; (2) 2012-2013; (3) 2013-2014; (4) 2014-2015; (5) 2015-2016.[4]

20.      Tragically, she forgot[5] to obtain the annual Fur-bearing Mammal Breeder permit after the 2015 permit expired in 2016.[6]

### III.     IDNR Investigates, Raids, Seizes her Beloved Coyotes, and Prosecutes

21.      On March 27, 2019, Defendant IDNR Conservation Police Sgt. Mooi ("Mooi"), who lived less than a block from Tranchita, on the same street, heard Tranchita's coyotes and began an almost month-long investigation into Tranchita and her coyotes.  As part of the investigation, Sgt. Mooi reviewed Tranchita's Facebook page and Instagram account which showed she possessed four coyotes, searched the IDNR licensing and permit database to check if Tranchita possessed any permits, interviewed Tranchita's neighbors, searched the USDA License database, made a warrantless entry upon Tranchita's property, via unauthorized access from a neighbor's property to look over Tranchita's fence, which was on Tranchita's property.

22.      At no time during Mooi's month-long investigation did Mooi contact Tranchita and talk to her.

23.      Mooi obtained a search warrant on April 23, 2019 by falsely attesting to the state judge, '[t]here were no current licenses or permits listed for that address, or for Tranchita."  Mooi failed to inform the magistrate that Tranchita possessed a USDA Class C Exhibitor License.  At the time the search warrant was obtained in 2019, Tranchita held a 2019-2020 USDA Class C

---

[4] Ex. A – IDNR Permit List for Tranchita.
[5] Unlike Tranchita's USDA license, the Illinois permit does not require any annual inspection or other activity to act as a reminder, and Tranchita tragically forgot to obtain the $25.00 Fur-bearing Mammal Breeder permit for the years 2016-2017, 2017-2018, and 2018-2019.
[6] The Fur-bearing Mammal Breeder permit expires on March 31 of the following year.

Exhibitor License. Mooi also conveniently failed to inform the magistrate that she had previously possessed a Fur-bearing Mammal Breeder permit from 2011 to 2016. The search warrant did not mandate seizure of the coyotes, and read "possible seizure," but that did not matter to Mooi.

24. The search warrant listed the criminal offenses Mooi alleged Tranchita committed (1) 520 ILCS 5/2.2 Unlawful Taking[7] of a Protected Species; (2) 520 ILCS 5/2.30 – Unlawful Taking[8] of a Fur-Bearing Animals; (3) 520 ILCS 5/2.33bb – Unlawful to Import, Carry Into, or Possess Alive, Any Wildlife From Another State Without a License;[9] (4) 520 ILCS 5/2.33nn – Possession of Wildlife or Wildlife Parts Taken[10] Unlawfully In Any State or Country; and (5) 520 ILCS 5/3.25 – Unlawful Possession of a Fur-Bearing Mammal without a Fur-Bearing Mammal Breeder permit.

25. On April 24, 2019, life changed forever, and it was the end of 13 years of the rewarding work and peaceful living with Tranchita's ambassador coyotes.

26. On that day Mooi and five other armed public officials, in an armed raid orchestrated by Mooi, violently and cruelly seized her coyotes. As Mooi aggressively, and with his hand on his gun confronted Tranchita, repeatedly yelling, "We're taking your coyotes *NOW!* You should be happy you had 13 years with the coyotes, but now it's over."

---

[7] According to 520 ILCS 5/1.2o ""Take" means hunt, shoot, pursue, lure, kill, destroy, capture, gig or spear, trap or ensnare, harass, or to attempt to do so." At no time in Tranchita's life has she taken a coyote.
[8] Id.
[9] None of Tranchita's coyotes were imported from another state.
[10] According to 520 ILCS 5/1.2o ""Take" means hunt, shoot, pursue, lure, kill, destroy, capture, gig or spear, trap or ensnare, harass, or to attempt to do so." At no time in Tranchita's life has she taken a coyote.

27.     During the raid, and as Tranchita's coyotes were being horrifically and inhumanely seized, Mooi told Tranchita her "furbearing permit" had lapsed, but that it did not matter, because it was the wrong permit anyway,[11] and that she needed an educational permit from the State, and once she had that permit, she could get new coyotes but would never see her four coyotes again.

28.     Tranchita begged Mooi to let her pay that day for any permit she needed and told him she would obtain whatever permit she is required to hold.  She begged him to allow her to implement her USDA Class C Exhibitor License Emergency Plan, which would have ensured the coyotes were transferred to Indiana Coyote Rescue Center, where Luna is currently located.  She begged him to allow her to crate the coyotes for their safety, and told him that it would be easy for her to place the coyotes in crates, because they trusted Tranchita and were crate trained as part of Tranchita's USDA Emergency Plan.

29.     Sgt. Mooi ignored all of her desperate pleas, and in the presence of witnesses, told Tranchita he was "going on vacation this afternoon" and wanted the seizure performed "as quickly as possible" so as not to interfere with his vacation, and he did not have time to wait for her to crate the coyotes, and the coyotes were being seized no matter what permits she obtained. Mooi in a sarcastic tone, told her she could call a mental health hotline.  He also told her that he found her listed on the USDA website as having an active Class C Exhibitor's License. Curiously, in obtaining the search warrant, Mooi failed to disclose to the Judge that Tranchita possessed a 2019-2020 USDA license.

---

[11] Yet, Tranchita was criminally charged for not holding a 2019-2020 Fur-bearing Mammal Breeder permit.

30.     With no professionalism and no sensitivity for Tranchita's feelings or the safety of her coyotes, the armed officers joked and laughed loudly about seizing the coyotes. They terrorized the coyotes by chasing them and flipping over all the structures they tried to hide in, and shot three of Tranchita's coyotes at close range with tranquilizer darts, and – without giving the tranquilizer time to take effect – noosed and dragged the terrified and struggling coyotes across the cement, leaving trails of the coyotes' blood on the ground. One of the Cook County Officers shouted gleefully, "I love the sound of a dart hitting an animal. Turkey pop!". This brutal seizure was documented on video by Tranchita.[12]

31.     During the armed raid, and while the coyotes were being inhumanely seized, Mooi handed Tranchita a pre-signed and pre-dated relinquishment form and told Tranchita, in the presence of Cook County Animal Control Officer Ruby Wilson, that if she did not sign the surrender form, her coyotes would waste away at the IDNR facility, where the cages were small and where her coyotes would probably die or be "euthanized due to stress of the new environment."

32.     Mooi told Tranchita that if she signed the relinquishment form the coyotes would go to a spacious facility with an enclosure of one-acre for each coyote.

33.     While Mooi was pressuring her to sign the relinquishment form, and while Tranchita had full view of the brutal seizure of her beloved coyotes, Mooi stroked Tranchita's breast, which caused her to jump back in shock.

---

[12] https://youtu.be/-e3JZ8AdJ3M (April 24, 2019--The violent, inhumane capture of Tranchita's educational coyote, Luna, bleeding, gasping for air, and being dragged on an incorrectly used choke hold pole); https://youtu.be/WWLQtNzG_fY (Tranchita's educational coyote, Peytah, being dragged on an incorrectly used choke hold pole, collapsing from the cutting off of his airway).

34.    Tranchita signed the relinquishment form under extreme duress.  She did not want her coyotes to be "euthanized" by the State of Illinois and did not want them to live the rest of their lives in a small cage.

35.    It is notable that IDNR Officer Suzanne Klemme was present and involved in both the 2011 inspection of Tranchita's property and was also present and involved in the 2019 seizure of her four coyotes.

36.    Six days after signing the relinquishment form, Tranchita emailed Mooi's supervisor, Jed Whitchurch and Defendant Callahan, informing them that she was rescinding the relinquishment because it had been signed under extreme duress and false pretenses.[13]

37.    IDNR and Tranchita agreed during the criminal case, that the sole survivor, Luna be transferred to Indiana Coyote Rescue Center.  The agreement was made on the record, and specifically states that Tranchita is not relinquishing her property rights in Luna or her property interest in this coyote.[14]

38.    The video of the seizure is painful to watch but shows the inhumane seizure of Tranchita's coyotes.[15]

39.    Tranchita's heart broke that day, and it was the beginning of many months of health decline, sleep deprivation, and emotional distress, that plagues Tranchita to this day more than seventeen months later.  The result of the brutal raid was that Peytah, Bella and Sandy died, and Luna and Tranchita have still not recovered from the trauma.

---

[13] Ex. B – Rescind Email.
[14] Ex C, p. 2 – State Criminal Agreement.
[15] https://youtu.be/-e3JZ8AdJ3M (April 24, 2019--The violent, inhumane capture of Tranchita's educational coyote, Luna, bleeding, gasping for air, and being dragged on an incorrectly used choke hold pole); https://youtu.be/WWLQtNzG_fY (Tranchita's educational coyote, Peytah, being dragged on an incorrectly used choke hold pole, collapsing from the cutting off of his airway).

40.     After IDNR seized Tranchita's coyotes, Mooi handed Tranchita three Illinois

Conservation Citation and Complaints which charged her with violations of the Illinois Wildlife

Act,

    a.  Count 1, 520 ILCS 5/2.33(dd) ("Prohibitions);

    b.  Count 2, 520 ILCS 5/3.26 ("Hound Running Area permits; Requirement"); and

    c.  Count 3, 520 ILCS 5/2.30 (Fur-Bearing Mammals).

41.     Prior to being served with the criminal complaints, Tranchita did not know that IDNR

required her to hold a Hound Running Area permit, because in 2011 IDNR told her she was only

required to hold a Fur-bearing Mammal Breeder permit, and for five years this is the permit she

held.

42.     A week after the raid and seizure, on May 3, 2019 Tranchita obtained her 2019-2020 Fur-

bearing Mammal Breeder permit.[16]

43.     On May 18, 2019, Tranchita, immediately upon learning that IDNR was requiring her to

possess a Hound Running Area permit, went online and obtained the 2019-2020 Hound Running

Area permit.  However, a few days later May 22, 2019, IDNR revoked this 2019-2020 Hound

Running Area permit.[17]

44.     On June 26, 2019, the State amended Count 2 from a violation of the Hound Running

Area permit statute (520 ILCS 5/3.26) to a violation of the Fur-bearing Mammal Breeder statute

(520 ILCS 5/3.25).

---

[16] Ex. D – 2019-2020 Fur-bearing Mammal Breeder permit.
[17] See Ex. E – May 22, 2019 IDNR Notice of Revocation.  The date of the letter is incorrect.  It
could not have been April 22, 2019, as the seizure of the coyotes had not occurred and IDNR had
not issued Tranchita a hound running permit until May 18, 2019.  According to IDNR, the permit
was issued in error.  IDNR required Tranchita to complete a "correct" application which was
attached to the revocation letter.  Tranchita completed and mailed in the corrected application.

45. On September 17, 2019, Tranchita pleaded guilty[18] to not having a Fur-bearing Mammal Breeder permit (520 ILSC 5/3.25), and the other counts were dismissed. Tranchita agreed to plead guilty to that criminal charge only because the State told her that otherwise the State of Illinois would not allow Luna, the last surviving coyote, to be transferred to the Indiana Coyote Rescue Center. The plea was strictly to save Luna's life, since she was faring very poorly in the inappropriate, indoor IDNR-approved facility.

## IV.    State Challenge

46. Soon after the raid and seizure, on May 14, 2019 Tranchita "filed a six-count [42 U.S.C. 1983] complaint in which she alleged claims under the fourth and fourteenth amendments." See *Tranchita v. Dep't of Nat. Res.*, 2020 IL. App. (1st) 191251, ¶ 9 (May 1, 2020).[19]

47. As part of the civil action, Tranchita "also filed an emergency motion for preliminary injunctive relief, arguing that the coyotes' lives were at risk if they are not returned. In the motion, plaintiff alleged that she had a constitutionally protected property interest in the coyotes, pursuant to her federal exhibitor license. As a result, she was entitled to notice and an opportunity for a hearing prior to the seizure of the coyotes." *Id.* Tranchita "further claimed she would suffer irreparable harm without the relief because the coyotes were unique creatures with no market value and no amount of money could compensate for their loss. Plaintiff argued that she had a likelihood of success on the merits because she had valid possession of the coyotes under Illinois law." *Id.*

48. The trial court denied her preliminary injunction, and Tranchita appealed that decision.

---

[18] Tranchita received six months court supervision, a $100 fine, and was ordered to pay fees and costs of $197

[19] Ex. F – *Tranchita v. Dep't of Nat. Res.*, 2020 IL. App. (1st) 191251, ¶ 9, *3, Appellate Court of Illinois, First District Sixth Division Appeal,

49. On October 24, 2019 Defendant Fischer stated to Tranchita, "The possession of a fur bearing breeder permit alone, or with a USDA Exhibitor's license, does not allow you to possess coyotes in the State of Illinois."[20]

50. IDNR made the following statements during the state trial case,

    **a.** "Illinois law clearly states that coyotes are considered contraband unless the individual has both a fur-bearing mammal breeder permit and a hound running Area permit under Section 3.26 of the Act."[21]

    **b.** "Illinois law prohibits individuals from possessing coyotes, a fact which Plaintiff should be aware considering she is set to appear in Cook County criminal court on May 20, 2019 on charges related to her illegal possession of coyotes * * *."[22]

    **c.** "Illinois law clearly mandates that coyotes are considered contraband unless the individual has both a fur-bearing mammal breeder permit and a hound running Area permit under Section 3.26 of the Act."[23]

    **d.** "The plain language of the Wildlife Code provides, the fur-bearing mammal permit does not allow for the possession of coyotes.  The only exception to this bar is if an individual possesses a hound-area running permit."[24]

51. The Illinois Attorney General Kwame Raoul (Defendant) made the following statements in its Appeal Brief and in an email to Tranchita's state attorney,

    **a.** "[F]ur-bearing mammal breeder permits for coyotes are allowed only for "persons who hold[ ] a hound running Area permit.' id. § 3.25; see id. § 3.26."[25]

---

[20] Ex G – October 24, 2019 Letter from Defendant John Fischer to Tranchita.

[21] Ex H – Tranchita v. IDNR, et al., Case No. 2019 CH 05968, In the Circuit Court of Cook County, Illinois, Defendant Illinois Dept. of Natural Resources' Response to Plaintiff's Emergency Motion for a Temporary Restraining Order/Preliminary Injunction, p. 8-9.

[22] Ex H, p. 2.

[23] Ex I – Tranchita v. IDNR, et al., Case No. 2019 CH 05968, In the Circuit Court of Cook County, Illinois, Defendant Illinois Department of Natural Resources Combined Motion to Dismiss Pursuant to 735 ILCS 5/2-619.1, p. 8.

[24] Ex J - *Tranchita v. IDNR, et al.*, Case No. 2019 CH 05968, In the Circuit Court of Cook County, Illinois, , Defendant Illinois Department of Natural Resources' Reply in Support of its Motion to Strike and Dismiss Plaintiff's Requests for Injunctive (sic) Relief Pursuant to 735 ILCS 5/1-619(a)(9), at p. 4.

[25] Ex. K - *Tranchita v. IDNR, et al.*, Case No. 1-19-1251, Brief of Defendant-Appellee Illinois Department of Natural Resources, Appellate Court of Illinois, First Judicial District.

**b.** "As you have been informed repeatedly, under the Wildlife Code, an individual must possess both a fur-bearing mammal breeder permit **and** a hound running Area permit to possess a coyote in Illinois. As a result, even if Ms. Tranchita now has a fur-bearing mammal breeder permit, she still cannot legally possess a coyote under the Wildlife Code."[26]

**c.** "In addition to the fur-bearing mammal breeder permit, a person who wishes to keep coyotes also must have a hound running Area permit. [27]

**d.** "The only way to lawfully keep coyotes in Illinois is to have both a fur-bearing mammal breeder permit and a hound running area permit."[28]

52.  More than a year after the raid and seizure, on May 1, 2020, the appellate court of Illinois decided her appeal.

53.  As stated by that state court,

> "Before the trial court was the fact that plaintiff did not have a valid fur-bearing mammal breeder permit at the time the IDNR seized her coyotes. Pursuant to the Wildlife Code, coyotes possessed without such a permit are contraband. Without a legitimate claim of entitlement to the property, plaintiff had no right to a property interest protected by due process when her coyotes were seized. Therefore, the trial court properly denied her motion for a preliminary injunction."

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 24 (May 1, 2020).

54.  That appeal court also stated,

> From the moment her permit lapsed, plaintiff's possession of the coyotes violated section 3.25 of the Wildlife Code. Wildlife possessed "contrary to any of the provisions [hereof]" is contraband. Id. §1.2c. No person or party can assert legal ownership or right to possession of property that is contraband. *Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46 (1964).

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 17 (May 1, 2020).

---

[26] Ex L - December 26, 2019 Email from Brian Jant, Assistant Attorney General of Illinois to Tranchita's state attorney, David Tennenbaum. (emphasis in original).
[27] Ex K, at p. 8.
[28] Ex K, p. 12.

55.     The state appeal court held "under Illinois law, a person must have a fur-bearing mammal breeder permit before possessing or raising a coyote." *Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 16 (May 1, 2020).

## V.     Tranchita's Fur-bearing Mammal Breeder permits

56.     Inexplicably and tragically Tranchita's state attorneys failed to include in the state action the critical fact that Tranchita obtained and held a Fur-bearing Mammal Breeder permit prior to the filing of the state complaint.  And therefore, that operative fact was not before the state trial court or the state appeal court.

57.     IDNR issued Tranchita a Fur-bearing Mammal Breeder permit for the following years, (1) 2011-2012; (2) 2012-2013; (3) 2013-2014; (4) 2014-2015; (5) 2015-2016; (6) 2019-2020; (7) 2020-2021. [29]  These permits expire on March 31 of the following year.

58.     Unlike Tranchita's USDA license, the Illinois Fur-bearing Mammal Breeder permit does not require any annual inspection or other activity to act as a reminder, and Tranchita tragically forgot to obtain the $25.00 Fur-bearing Mammal Breeder permit for the years 2016-2017, 2017-2018, and 2018-2019, 2019-2020. [30]

59.     On May 3, 2019, Tranchita obtained a 2019-2020 Fur-bearing Mammal Breeder permit soon after the raid and seizure. [31]

60.     Tranchita currently holds a 2020-2021 Fur-bearing Mammal Breeder permit. [32]

---

[29] Ex. A – IDNR Permit List for Tranchita.
[30] After the raid and seizure, Tranchita obtained the 2019-2020 Fur-bearing Mammal Breeder permit.
[31] Ex. D – 2019-2020 Fur-bearing Mammal Breeder permit.
[32] Ex. M - 2020-2021 Fur-bearing Mammal Breeder permit.

61.     To obtain the 2019-2020 and 2020-2021 Fur-bearing Mammal Breeder permit, the process was quick and simple.  Tranchita went online to IDNR's permit webpage.  The less than five minute permit process, which resulted in IDNR issuing the permits to her online, cannot be compared in any form or manner to the rigorous application and inspections process required by the USDA to obtain a Class C Exhibitor License.

**VI.     Tranchita's Animal Welfare Act USDA Class C Exhibitor License**

62.     Every year, from 2006 to present, the United States Department of Agriculture has issued to Tranchita a Class C Exhibitor License pursuant to the Animal Welfare Act (7 U.S.C. 2121, et seq.).[33]

63.     Tranchita holds this license so she can educate the public about coyotes and be allowed to have the public view the coyotes.

64.     The USDA Class C Exhibitor License subjected Tranchita to yearly unannounced inspections by USDA Veterinarians, and during the thirteen years of keeping coyotes, Tranchita passed every federal USDA inspection with flying colors.  During these inspections, the USDA Veterinarians discussed in detail with Tranchita, her required obligations to provide humane care, including medical, food, shelter, and containment, and  mandated protocols vis-à-vis the educational public tours.  The USDA Veterinarians approved Tranchita's coyotes' enclosures and approved of the care of the coyotes, which they declared non-releasable.

65.     The USDA License Application,[34] which Tranchita must complete every year for her Class C Exhibitor License, sets forth the Animal Welfare Act standards which Tranchita is

---

[33] Attached as Exs. N and O - Tranchita's 2019-2020 and 2020-2021 USDA Class C Exhibitor Licenses.
[34] Ex. P – USDA Class C Exhibitor License Application.

required to abide by and that license requires Tranchita to have an Emergency Plan for the coyotes, in the event they needed to be safely relocated due to a natural disaster, or other emergency.

66.     On the day of the raid (described below) Tranchita held a 2019-2020 USDA Class C Exhibitor License.[35]

67.     Tranchita currently holds a current 2020-2021 USDA Class C Exhibitor License. [36]

**VII.     IDNR Issues, but then Revokes Tranchita's 2019-2020 Hound Running Area permit**

68.     On May 18, 2019, Tranchita, immediately upon learning that IDNR was requiring her to possess a Hound Running Area permit, went online and obtained the 2019-2020 Hound Running Area permit.  However, a few days later (May 22, 2019[37]) IDNR revoked this 2019-2020 Hound Running permit because, according to IDNR, the permit was issued in error.  IDNR required Tranchita to complete a "correct" application which was attached to the revocation letter. Tranchita completed and mailed in the corrected application.

69.     On August 26, 2019 IDNR rejected Tranchita's second attempt to obtain a Hound Running Area permit, informing her that her Hound Running Application, (1) did "not meet the requirements provided in 17 Illinois Administrative Code Part 970 [ ] for an HRA Permit. Specifically: The proposed HRA does not meet the definition of an HRA.  The minimum HRA acreage requirement is not achievable in the location proposed"; and (2) "The proposed HRA is

---

[35] Ex N.
[36] Ex O.
[37] Ex. E – May 22, 2019 IDNR Notice of Revocation.  The date of the letter is incorrect.  It could not have been April 22, 2019, as the seizure of the coyotes had not occurred and IDNR had not issued Tranchita a hound running permit until May 18, 2019.

located in a developed urban area where the operation of an HRA would not be compatible or appropriate."

## VIII.   Tranchita Now Holds a Current 2020-2021 Hound Running Area Permit

70.     On April 30, 2020 IDNR issued a 2020-2021 Hound Running Area permit to Tranchita.[38]

71.     Again, the process was simple.  Tranchita went online to the State of Illinois website[39] to purchase her Hound Running Area permit.  She entered the information requested, such as her IDNR Customer Number, Driver License Number, Social Security Number, and Date of Birth,[40] checked the "Permits" option of "848 Hound Running Area", and paid the fee, and was issued the 2020-2021 permit, which expires on March 31, 2021.

72.     The only reason Tranchita procured a 2019-2020 and 2020-2021 Hound Running Area permit was so that she can be reunited with Luna at Tranchita's property in Illinois.

73.     IDNR has not revoked the 2020-2021 Hound Running Area permit.

74.     Thus, currently Tranchita holds both a 2020-2021 Fur-bearing Mammal Breeder Permit and a 2020-2021 Hound Running Area permit.

## IX.    Defendants Requires ONLY Tranchita to hold a Hound Running Area permit

75.     During the state appeal, Tranchita informed Defendants that others possessed coyotes without IDNR issuing a Fur-bearing Mammal Breeder permit and a Hound Running Area permit to those persons.

76.     IDNR's response was,

> Tranchita appears to have discovered that unaffiliated third parties
> that possess coyotes also lack proper permits to do so, which does

---

[38] Ex. Q – 2020-2021 Hound Running permit.
[39] https://www.il.wildlifelicense.com/license.php?action=custlkup&app=dt
[40] Id.

> not excuse her violation and is at most helpful to the Department in its enforcement of the Wildlife Code against others."[41]

77.     To date, Tranchita remains the only person who has been subjected to enforcement and prosecution for not possessing a Hound Running Area permit.

78.     The seizure of the coyotes occurred on April 24, 2019, and IDNR has had more than a year to enforce its new rule-of-law against others.

79.     Tranchita remains IDNR's **only** target.

80.     Historically IDNR has allowed Tranchita to possess coyotes without holding a Hound Running Area permit.

81.     Historically IDNR has allowed others to possess coyotes without holding a Fur-bearing Mammal Breeder permit.

82.     Historically IDNR has allowed others to possess coyotes without holding a Hound Running Area Permit.

### a.  Flint Creek Wildlife Rehabilitation

83.     Mooi lied to Tranchita about the idyllic life her coyotes would lead if she surrendered them.  The truth was that her coyotes were transported to no paradise.  Three weeks after IDNR seized Tranchita's four coyotes, three of her coyotes died at Flint Creek Wildlife Rehabilitation.

84.     Flint Creek has never held a Fur-Bearing Mammal Breeder permit or a Hound Running Area permit, and unlike Tranchita, Flint Creek does not possess any federal USDA licenses.

85.     IDNR has never issued Flint Creek a Fur-Bearing Mammal Breeder permit or a Hound Running Area permit.

---

[41] Ex. R, at p. 4 – IDNR's Response to Motion for Judicial Notice.

86.     Flint Creek Wildlife Rehabilitation has possessed coyotes in the past, and currently possesses coyotes.

87.     IDNR knows Flint Creek has possessed and currently possesses coyotes, without either a Fur-bearing Mammal Breeder permit or a Hound Running Area permit because on April 24, 2019, IDNR gave possession of Tranchita's coyotes to Flint Creek and on May 22, 2020, a person found two coyote pups and called Illinois Department of Natural Resources who then referred the finder to Flint Creek, who then took possession of the coyote pups.[42]

88.     IDNR allows Flint Creek to possess coyotes without holding a Fur-bearing Mammal Breeder permit and allows Flint Creek to possess coyotes without holding a Hound Running Area permit.

### b. Dawn Keller

89.     Dawn Keller is the Founder and Director of Flint Creek Wildlife Rehabilitation.

90.     Three weeks after IDNR seized Tranchita's four coyotes, three of her coyotes died in the possession of Dawn Keller.

91.     Dawn Keller has possessed coyotes and currently possesses coyotes.

92.     IDNR knows Dawn Keller possesses, and has possessed coyotes.

93.     Dawn Keller has never held a Fur-bearing Mammal Breeder permit.

94.     Dawn Keller has never held a Hound Running Area permit.

95.     IDNR has never issued a Fur-Bearing Mammal Breeder permit to Dawn Keller.

96.     IDNR has never issued a Hound Running Area permit to Dawn Keller.

---

[42] "Orphaned coyote pups on the mend at Flint Creek after nearly drowning in den", May 22, 2020, Barrington Hills Observer, available at https://barringtonhillsobserver.com/2020/05/22/orphaned-coyote-pups-on-the-mend-at-flint-creek-after-nearly-drowning-in-den/

97.     IDNR allows Dawn Keller to possess coyotes without holding a Fur-bearing Mammal Breeder permit.

98.     IDNR allows Dawn Keller to possess coyotes without holding a Hound Running Area permit.

### c.  Forest Preserve District of Dupage County, dba Willowbrook Wildlife Center

99.     Because Dawn Keller would not permit Tranchita to visit Luna, Tranchita obtained a court ordering allowing visits.  Dawn Keller was not willing to abide by that order, Luna, on May 31, 2019 was transferred to Forest Preserve District of Dupage County, dba Willowbrook Wildlife Center in Glen Ellyn, Illinois.

100.     Willowbrook also was not the idyllic sanctuary Mooi promised Tranchita if she surrendered her coyotes to IDNR.  Willowbrook housed Luna indoors, where she stayed for the following three months in a small pen that had no sunlight, fresh air, or enrichment.  On one visit Luna jumped through the window opening to be with Tranchita.  The next visit the window had fencing to bar any contact visitation.  Tranchita was guarded by IDNR officers during these visits.  One of the IDNR officers during one of the visits bragged about killing countless coyotes for $8 a pelt, while Tranchita was trying to make the best of the short time she had with her bonded coyote.  Other IDNR officers would bark orders at Tranchita, "Don't reach out to her!" and "If she comes near you, don't touch her!"  One of the IDNR officers told Tranchita they were following instructions from Mooi to prohibit any contact between her and Luna, and they continued even after the court ordered contact visits.  In the small indoor pen at Willowbrook Wildlife, Tranchita watched Luna's health deteriorate.  She had bites and stitches around her face.  To this day no one will tell Tranchita what happened to Luna's face.  Luna was weak, depressed, and lying in her own feces for weeks, alarming behavior in any carnivore.  Food

bowls of cat chow, dead mice and birds lay untouched. During her incarceration at Willowbrook, Luna was kept in indoor isolation for approximately three months, and video footage shows her laying in her feces, breathing erratically, barely moving, trembling, and in extreme fear and panic.[43]

101.    Willowbrook Wildlife Center has possessed coyotes, but it is unknown if it currently possesses a coyote.

102.    IDNR knows Willowbrook Wildlife Center has possessed coyotes.

103.    Willowbrook Wildlife Center has never held a Fur-bearing Mammal Breeder permit.

104.    Willowbrook Wildlife Center has never held a Hound Running Area permit.

105.    Like Tranchita, Willowbrook possesses a USDA Class C Exhibitor license.

106.    IDNR has never issued a Fur-Bearing Mammal Breeder permit to Willowbrook Wildlife Center.

107.    IDNR has never issued a Hound Running Area permit to Willowbrook Wildlife Center

108.    IDNR allows Willowbrook Wildlife Center to possess coyotes without holding a Fur-bearing Mammal Breeder permit.

109.    IDNR allows Willowbrook Wildlife Center to possess coyotes without holding a Hound Running Area permit.

### d. Big Run Wolf Ranch

110.    Big Run Wolf Ranch is in Lockport, Illinois.[44]

111.    Big Run Wolf Ranch has possessed coyotes, and currently possesses coyotes.

---

[43] https://youtu.be/Gb90b7gLm3c; https://youtu.be/o3tby63rqiE; https://youtu.be/IfoEq5Nw0gM
[44] Ex. S, p. 163 – USDA 2020-2021 Licenses, available at https://www.aphis.usda.gov/animal_welfare/downloads/List-of-Active-Licensees-and-Registrants.pdf, p. 163.

112.    Big Run Wolf Ranch has never held a Fur-bearing Mammal Breeder permit.

113.    Big Run Wolf Ranch has never held a Hound Running Area permit.

114.    IDNR has never issued a Fur-Bearing Mammal Breeder Permit to Big Run Wolf Ranch.

115.    IDNR has never issued a Hound Running Area permit to Big Run Wolf Ranch.

116.    IDNR knows Big Run Wolf Ranch has possessed coyotes.

117.    IDNR knows Big Run Wolf Ranch currently possesses coyotes.

118.    Big Run Wolf Ranch has possessed coyotes since 2011.

119.    Currently, Big Run Wolf Ranch possesses at least two coyotes: Mahala and Miwok.[45]

120.    Big Run Wolf Ranch has possessed Miwok since 2011. [46]

121.    IDNR allows Big Run Wolf Ranch to possess coyotes without a Fur-bearing Mammal Breeder permit.

122.    IDNR allows Big Run Wolf Ranch to possess coyotes without a Hound Running Area permit.

123.    Like Tranchita, Big Run Wolf Ranch possesses a 2020-2021 USDA Class C Exhibitor License.[47]


        **e.  John Basile**

124.    John Basile is the Founder and President of Big Run Wolf Ranch.

---

[45] Ex T, at 2-3 – Big Run Wolf Ranch webpage.
[46] http://www.bigrunwolfranch.org/our_other_animals.html.
[47] Ex S, p. 163.

125.    According to Big Run Wolf Ranch's website, "John Basile, President, has held a USDA federal license and has been working with large North American predators for 30 years."[48]  The USDA, however, does not list him as possessing any USDA licenses.[49]

126.    Basile has possessed coyotes, and currently possesses coyotes.

127.    Basile has never held a Fur-bearing Mammal Breeder permit.

128.    Basile has never held a Hound Running Area permit.

129.    IDNR has never issued a Fur-Bearing Mammal Breeder Permit to John Basile.

130.    IDNR has never issued a Hound Running Area permit to John Basile.

131.    IDNR knows John Basile has possessed coyotes.

132.    IDNR knows John Basile currently possesses coyotes.

133.    John Basile has possessed coyotes since at least 2011.

134.    Currently, John Basile possesses, at a minimum, two coyotes, Mahala and Miwok.

135.    IDNR allows John Basile to possess coyotes without a Fur-bearing Mammal Breeder Permit.

136.    IDNR allows John Basile to possess coyotes without a Hound Running Area permit.

137.    John Basile does not hold a USDA Class C Exhibitor License.

138.    John Basile has never held a USDA Class C Exhibitor License.

### f.  Wheaton Park District DBA "Cosley Zoo"

139.    Wheaton Park District, dba Cosley Zoo is in Wheaton, Illinois.

140.    Cosley Zoo has possessed coyotes and currently possesses coyotes.

141.    Cosley Zoo has never held a Fur-bearing Mammal Breeder permit.

---

[48] http://www.bigrunwolfranch.org/about_big_run.html
[49] Ex. S.

142. Cosley Zoo has never held a Hound Running Area permit.

143. IDNR has never issued a Fur-Bearing Mammal Breeder permit to Cosley Zoo.

144. IDNR has never issued a Hound Running Area permit to Cosley Zoo.

145. IDNR knows Cosley Zoo has possessed coyotes.

146. IDNR knows Cosley Zoo currently possesses coyotes.

147. Wheaton Park District, dba Cosley Zoo, holds a 2020 USDA Class C Exhibitor License.[50]

148. IDNR allows Cosley Zoo to possess coyotes without a Fur-bearing Mammal Breeder permit.

149. IDNR allows Cosley Zoo to possess coyotes without a Hound Running Area permit.

### g. Fox Valley Wildlife Center

150. Fox Valley Wildlife Center is in Elburn, Illinois.

151. Fox Valley has possessed coyotes, and currently possesses coyotes.

152. Fox Valley has never held a Fur-bearing Mammal Breeder permit.

153. Fox Valley has never held a Hound Running Area permit.

154. IDNR has never issued Fox Valley Wildlife Center a Fur-Bearing Mammal Breeder Permit,

155. IDNR has never issued Fox Valley Wildlife Center a Hound Running Area permit.

156. IDNR knows Fox Valley Wildlife Center has possessed coyotes.

157. IDNR knows Fox Valley Wildlife Center currently possesses coyotes.

158. Like Tranchita, Fox Valley possesses a 2020-2021 USDA Class C Exhibitor License.

---

[50] Ex S, at p. 166.

159.    IDNR allows Fox Valley to possess coyotes without a Fur-bearing Mammal Breeder permit.

160.    IDNR allows Fox Valley to possess coyotes without a Hound Running Area permit.

### h.  Treehouse Wildlife Center

161.    Treehouse Wildlife Center Inc is in Dow, Illinois.

162.    Treehouse Wildlife Center has possessed coyotes, and currently possesses coyotes.

163.    Treehouse Wildlife Center has never held a Fur-bearing Mammal Breeder permit.

164.    Treehouse Wildlife Center has never held a Hound Running Area permit.

165.    IDNR has never issued a Fur-Bearing Mammal Breeder permit to Treehouse Wildlife Center.

166.    IDNR has never issued a Hound Running Area permit to Treehouse Wildlife Center.

167.    IDNR knows Treehouse Wildlife Center has possessed, and currently possesses coyotes.

168.    Like Tranchita, Treehouse Wildlife Center possesses a 2020 USDA Class C Exhibitor License.

169.    IDNR allows Treehouse Wildlife Center to possess coyotes without a Fur-bearing Mammal Breeder permit.

170.    IDNR allows Treehouse Wildlife Center to possess coyotes without a Hound Running Area permit.

### i.  Hoo Haven Wildlife and Education Center

171.    Hoo Haven Wildlife and Education Center is in Durand, Illinois.

172.    Hoo Haven has possessed coyotes and currently possesses a coyote.

173. Hoo Haven currently possesses Angel the Coyote.[51]

174. Hoo Haven has never held a Fur-bearing Mammal Breeder permit.

175. Hoo Haven has never held a Hound Running Area permit.

176. IDNR has never issued a Fur-Bearing Mammal Breeder permit to Hoo Haven.

177. IDNR has never issued a Hound Running Area permit to Hoo Haven.

178. Hoo Haven does not possess a 2020-2021 USDA Class C Exhibitor License.

179. IDNR allows Hoo Haven to possess coyotes without a Fur-bearing Mammal Breeder permit.

180. IDNR allows Hoo Haven to possess coyotes without a Hound Running Area permit.

### j. Karen M. Herdklotz

181. Karen M. Herdklotz is the Director of Hoo Haven Wildlife and Education Center.

182. Herdklotz has possessed coyotes, and currently possesses a coyote named Angel.[52]

183. Herdklotz has never held a Fur-bearing Mammal Breeder permit.

184. Herdklotz has never held a Hound Running Area permit.

185. IDNR has never issued a Fur-Bearing Mammal Breeder permit to Herdklotz.

186. IDNR has never issued a Hound Running Area permit to Herdklotz.

187. Herdklotz does not possesses a 2020-2021 USDA Class C Exhibitor License.

188. IDNR allows Herdklotz to possess coyotes without a Fur-bearing Mammal Breeder permit.

189. IDNR allows Herdklotz to possess coyotes without a Hound Running Area permit.

---

[51] https://www.hoohaven.org/thisweek.htm
[52] https://www.hoohaven.org/thisweek.htm

## X.  In 2019 IDNR Issued Only Three Hound Running Area permits

190.  In 2019 IDNR issued Hound Running Area permits only to (1) Paradise Hills Fox Pen;

(2) Running L. Fox Pen; and (3) Tomi Tranchita.

191.  IDNR revoked Tranchita's 2019-2020 Hound Running Area permit.

192.  Paradise Hills Fox Pen and Running L. Fox Pen are hunting clubs whose mission is not to

offer sanctuary for wildlife for educational exhibiting.  Those entities specifically exist to hunt

wildlife, and to run hounds after caged foxes and coyotes.

## XI.  Tranchita has a Protectable Property Interest

193.  Illinois Criminal Code grants property rights to USDA federally licensed exhibitors,

> Sec. 1. Dangerous animals and primates; prohibitions.
> (a) No person shall have a right of property in, keep, harbor, care
> for, act as custodian of or maintain in his possession any dangerous
> animal or primate except at a properly maintained zoological park,
> federally licensed exhibit, circus, college or university, scientific
> institution, research laboratory, veterinary hospital, hound running
> area, or animal refuge in an escape-proof enclosure.

720 ILCS 5/48-10(b).

194.  The state appeal court determined that "48-10(b) does not give plaintiff a property right

in coyotes possessed without a valid fur-bearing mammal breeder permit."  *Tranchita v.*

*Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 20 (May 1, 2020).

195.  Because Tranchita has a valid 2020-2021 Fur-bearing Mammal Breeder permit, she also

has a property right in coyotes pursuant to 48-10(b).

196.  The Wildlife Code, which IDNR prefers to the Illinois Criminal Code, states: "Nothing in

this Act shall prohibit bona-fide public or state scientific, educational[,] or zoological institutions

from receiving, holding, and displaying protected species that were salvaged or legally obtained." 520 ILCS 5/2.2.[53]

197.    For fourteen years Tranchita has been licensed by the USDA as a licensed exhibitor.  For the entire fourteen years her facility has been "properly maintained."  She has never had any citations, or even informal feedback on any deficiencies in her facility or the care she gave the coyotes.

198.    Tranchita has a legitimate claim of entitlement to Luna.

199.    Tranchita has a property interest in Luna protected by due process.

## XII.    The Relevant State Statutes

### a.    Illinois Fur-bearing Mammal Breeder Statute

200.    Illinois Wildlife Act defines a coyote as a "fur-bearing mammal[ ]."  520 ILCS 5/1.2g.

201.    According to 520 ILCS 5/3.25 (2018),

> Any individual who, within the State of Illinois, holds, possesses or engages in the breeding or raising of live fur-bearing mammals, protected by this Act, except as provided in Sections 1.6 or 1.7,[54]

---

[53] Tranchita's USDA license and history makes her sanctuary bona fide, and her coyotes were all salvaged or otherwise legally obtained, despite IDNR allegations about illegal "taking".

[54] Section 1.6 and 1.7 provide as follows,
      (520 ILCS 5/1.6) (from Ch. 61, par. 1.6)
         Sec. 1.6. The Department, and persons authorized by it, may take, purchase or propagate, any mammals or birds, or eggs of such birds for propagation and stocking purposes, and when so taken, may transmit them to parts of the State where a scarcity of such birds or mammals exists, for the purpose of restocking such parts of the State.
      (Source: P.A. 81-382.)

      (520 ILCS 5/1.7) (from Ch. 61, par. 1.7)
         Sec. 1.7. The Department is authorized to produce such mammals, birds or their eggs, and to distribute them to anyone having suitable land or means for their breeding, hatching or further propagation; the Department shall also have authority to enter into agreements with such distributes for the propagation or purchase of mammals, birds, (or their eggs), produced by such

shall be a fur-bearing mammal breeder in the meaning of this Act. Before any individual shall hold, possess, or engage in the breeding or raising of live fur-bearing mammals, he shall first procure a fur-bearing mammal breeder permit. Fur-bearing mammal breeder permits shall be issued by the Department. The annual fee for each fur-bearing mammal breeder permit shall be $25. All fur-bearing mammal breeder permits shall expire on March 31 of each year.

520 ILCS 5/3.25.

202.     The last paragraph of the Fur-bearing Mammal Breeder permit Statute is the section

which IDNR relies upon to bar Tranchita from possessing a coyote unless she holds a Hound

Running Area permit,

No fur-bearing mammal breeder permits will be issued to hold, possess, or engage in the breeding and raising of striped skunks acquired after July 1, 1975, or coyotes acquired after July 1, 1978, except for coyotes that are held or possessed by a person who holds a hound running Area permit under Section 3.26 of this Act.

520 ILCS 5/3.25.

203.     Any person who violates section 3.25 or section 3.26 of the Wildlife Code "shall be

guilty of a Class B misdemeanor." 520 ILCS 5/3.5 (2018).


**b.   Illinois Hound Running Area Statute**

204.     The Hound Running Area statute provides in relevant part,

(a) Any person owning, holding, or controlling by lease, for a term of at least 5 years, any contiguous tract of land having an area prescribed by administrative rule *who desires* to establish a hound running area to pursue authorized species with hounds in a way that is not designed to capture or kill the authorized species, shall apply to the Department for a hound running Area permit under this Section. The application shall be made under oath of the applicant or under oath of one of the applicant's principal officers if the applicant is an association, club, or corporation. The annual fee for

---

distributes.
(Source: P.A. 81-382.)

each hound running Area permit is $250. All hound running Area permits expire on March 31 of each year.

Every applicant under this Section must also hold a fur-bearing mammal breeder permit or a Class B commercial game breeder permit, as appropriate.

ILCS 5/3.26(a) (emphasis added).

205.     "Any person who violates section 3.25 or section 3.26 of the Wildlife Code "shall be guilty of a Class B misdemeanor." 520 ILCS 5/3.5 (2018).

### c. Illinois Administrative Code

206.     Illinois Administrative Code contains rules pertaining to Hound Running Area permits.

207.     There are no Administrative rules for the Fur-bearing Mammal Breeder statute. [55]

208.     The new policy requiring only Tranchita to possess a Hound Running Area permit is not in conformance with the Illinois Administrative Code.

209.     "The Department [of Natural Resources] is authorized to make rules and regulations for carrying out, administering, and enforcing the provisions of this Act.  These rules and regulations shall be called and hereinafter referred to as administrative rules."  520 ILCS 5/1.15.

210.     According to Illinois Administrative Code, Section 260.350(a), "Agency rules that are not adopted in accordance with the procedures set forth in the Act are invalid and unenforceable."[56]

211.     "Rule" means each agency statement of general applicability that implements, applies, interprets, or prescribes law or policy.  (5 ILCS 100/1-70).

---

[55] https://www.ilga.gov/commission/jcar/admincode/017/017parts.html
[56] https://www.ilga.gov/commission/jcar/admincode/001/001002600003500R.html

212.     "No agency rule is valid or effective against any person or party, nor may it be invoked by the agency for any purpose, until it has been made available for public inspection and filed with the Secretary of State as required by this Act."  5 ILCS 100/5-10(c).

213.     Defendants' new policy requiring only Tranchita to obtain a Hound Running Area permit is akin to a rule which was adopted without following the procedures of the Administrative Act, and therefore is invalid and unenforceable.

## XIII.   It is Impossible for Tranchita to Meet the Hound Running Permit Application Requirements

214.     An applicant for a Hound Running Area permit must have a two-coyote minimum for a hound running area.  *See* Illinois Administrative Code Section 970.40(a) ("Coyote and fox hound running areas shall contain not less than 2 animals and shall not contain more than 4 animals per each full 20 acres.").  If this Court orders Luna to be returned to Tranchita, she has no intention of getting another coyote, and will not meet the requisite two-coyote minimum requirement.

215.     The Hound Running Area requirements mandate Tranchita install "[e]lectric wires with sufficient current to contain coyotes, foxes and raccoons and deter hounds shall be placed on and along the perimeter of hound running areas * * * ."  17 Ill. Adm. Code Section 970.40(f)(4).  If Tranchita installs electric fences, this will conflict with the USDA Animal Welfare Act's standards of care, and her USDA Class C Exhibitor license would be in jeopardy, and she could be criminally charged with violating the Animal Welfare Act.

216.     The Hound Running Area requirements mandate Tranchita ear-tag her coyotes, and this would conflict with the USDA Animal Welfare Act's standards of care, and her USDA Class C Exhibitor license would be in jeopardy, and she could be criminally charged with violating the Animal Welfare Act.

217.    The Hound Running Area permit Statute only authorizes IDNR to issue Hound Running

Area permits to those persons "owning, holding, or controlling by lease, for a term of at least 5

years, any contiguous tract of land having an area prescribed by administrative rule."  520 ILCS

5/3.26(a); *see also* 17 Ill. Adm. Code Section 970.40(d)(1) ("Coyote and fox hound running

areas shall have an area of not less than 160 contiguous acres with a dog-proof escape area in

each 20 acre tract."  970.40(d).  Tranchita does not have the required acreage to run hounds after

her coyotes, and she would have to sell her property and purchase property with the required

acreage to possess a coyote in Illinois pursuant the Hound Running Area statute.

218.    The Hound Running Area requirements only permit "fit animals" to be released into the

hound running areas.  17 Ill. Adm. Code Section 970.80(c).  Fit means,

> Animals free of injuries that might prevent them from evading
> hounds and, in the case of raccoons, foxes and coyotes, treated for
> parasites (i.e., roundworms, tapeworms, hookworms) and
> inoculated to prevent diseases (i.e., canine distemper, hepatitis,
> parainfluenza, parvovirus) that might infect domestic dogs or
> others of their kind.

Admin Code 970.10.  Tranchita's coyote, Luna, is not a "fit animal".  She cannot be vaccinated

due to the dangers.  If Luna is deemed "unfit", which she will be because she does not meet the

definition of "fit", the Administrative Code requires her to be "euthanized by gunshot or by a

licensed veterinarian."  970.80(e).

219.    The Hound Running Area permit also requires the coyotes to be vaccinated for canine

distemper, hepatitis, parainfluenza, parvovirus.  Admin Code 970.10.  Tranchita's coyotes,

however, were not supposed to have been vaccinated, and Luna cannot be vaccinated again.[57]

Tranchita's private Veterinarian, Kate Ball and one of the USDA veterinarians who conducted an

---

[57] Dawn Keller vaccinated Tranchita's coyotes after they were seized by IDNR, and it is
expected that those vaccinations killed her three coyotes.

inspection of Tranchita's facility, advised her that giving the vaccines (which were created for dogs) could kill them.

220.    Tranchita's coyotes enjoyed dogs whenever they had the opportunity to interact, which makes Luna unsuitable for hound running, because Luna will run toward the dogs and want to play.  Luna is hand-raised, semi-domesticated and docile, unlike a wild coyote that would give chase if released.

221.    Tranchita does not want to train hound dogs, and she does not want to have hound dogs.

222.    The Hound Running Statute requires Tranchita to desire to run hounds after her coyotes. See ILCS 5/3.26(a) ("if a person "desires to establish a hound running area to pursue authorized species with hounds in a way that is not designed to capture or kill the authorized species, [they] shall apply to the Department for a hound running Area permit under this Section.").

223.    Tranchita has no desire to run hounds after coyotes.

224.    Tranchita has no desire to run hounds after Luna, her last surviving coyote.

225.    Tranchita has no desire to run hounds after any coyote.

226.    Tranchita has no desire to hurt coyotes in any way.

227.    Tranchita has no desire to have dogs attack coyotes.

## XIV.  Animal Welfare Act

228.    Every year since 2006, Tranchita has possessed a United States Department of Agriculture Class C Exhibitors License.

229.    This license is issued under the Animal Welfare Act 7 U.S.C. 2131 et seq.[58]

230.    The Animal Welfare Act bars her from running hounds.

---

[58] Ex P.

231.   The purpose of the Animal Welfare Act (AWA) is "to protect certain animals from inhumane treatment and neglect."[59]

232.   The Animal Welfare Act "requires that basic standards of care and treatment be provided for certain animals bred and sold for use as pets, used in biomedical research, transported commercially, or exhibited to the public. Individuals who operate facilities in these categories must provide their animals with adequate care and treatment in the areas of housing, handling, sanitation, nutrition, water, veterinary care, and protection from extreme weather and temperatures. Although federal requirements establish basic standards, regulated businesses are encouraged to exceed these standards.[60]

233.   The AWA prohibits staged dogfights, bear or raccoon baiting, cockfighting, and similar animal fighting ventures. [61]

234.   Luna's USDA status as non-releasable makes her unsuitable for hound running.  All Tranchita's coyotes were deemed non-releasable on every inspection by USDA veterinarians because they are too accustomed to humans, cannot survive without human assistance, and wild coyotes are territorial, and her coyotes would be attacked and killed if released.  The contrast between hound running and protecting non-releasable coyotes could not be starker.

235.   A Hound Running Area permit is preposterous for a wildlife sanctuary.

236.   According to the IDNR's own records, no other coyote educational facility in Illinois has been required to hold a hound running permit.

237.   Hound running is inhumane for both dogs and coyotes.

238.   According to the Animal Welfare Institute,

---

[59] Id. at 10.
[60] Id.
[61] Id.

> [i]n penning operations, coyotes and foxes are trapped in the wild—often in leghold traps—and subsequently released into fenced enclosures, to be chased and often mauled to death by domestic hunting dogs during field trials.[62]

> \* \* \*

> 'Penning' is the brutal practice of placing live foxes and coyotes in an enclosed pen as bait for hunting dogs. Predictably, this blood sport frequently ends violently for the prey animals, who are often cornered, maimed, and killed by the packs of dogs that are set upon them. Despite its inherent cruelty, penning is legal in several states across the country. Growing public awareness of what happens within these pens, however, is encouraging more and more governments to ban or restrict penning. [63]

239. Dogs also get harmed in this brutal practice.[64]

240. Videos of this brutal practice can be watched on YouTube.[65]

241. To require Tranchita, indeed anyone who respects animals, to participate in this barbaric practice constitutes cruel and unusual punishment.

## XV.      Tranchita's Religious Belief

242. Tranchita's religious, ethical, and moral beliefs prevent her from running hounds after coyotes.

---

[62] Animal Welfare Institute, Protection of Wild Foxes and Coyotes, available at https://awionline.org/cases/protection-wild-foxes-and-coyotes,

[63] "Indiana Coyote Penning—An Inside Look at Animal Abuse and Cruelty – AWI Publication, available at http://www.projectcoyote.org/documents/IN_Penning_Report_PC_ALDF_AWI_Final_low_res.pdf, page 2.

[64] Inside the controversial culture of using dogs to hunt coyotes, Washington Post, December 17, 2015, available at https://www.google.com/url?q=https%3A%2F%2Fwww.washingtonpost.com%2Fnews%2Fin-sight%2Fwp%2F2015%2F12%2F17%2Fthe-beauty-and-controversy-of-hunting-coyotes-with-hounds%2F%3FoutputType%3Damp&sa=D&sntz=1&usg=AFQjCNH6LaUsWx95uYjPw3YHGdPWC8m3IQ

[65] Shockingly this Michigan Hound Hunter was Found Not Guilty, Humane Society of the United States, 2014, https://youtu.be/KaKHUfKkWEc; See also Coyote Hunting with Hounds is Legalized Dog-Fighting! https://youtu.be/03LJZAKo4bY

243.    Hound running is disdainful to Tranchita, and her beliefs prevent her from engaging in these activities and prevent her from desiring to run hounds after coyotes.

244.    Tranchita's religious belief requires her to "do unto others as you would have them do unto you."

245.    This religious belief extends to animals as well as humans.

246.    Tranchita believes that hound running is a terribly unethical practice and to her, it is an extreme moral violation to force animals to fight and attack and cause injury and death.

247.    Tranchita would never subject her coyotes or dogs or any animal to the stress, cruelty, pain, confusion, and suffering that is inflicted upon animals during hound running sessions.

248.    Tranchita is an educator and the thought of being placed in the category of an unethical coyote torturer and killer by her state agency is utterly disappointing and cruel.

249.    Tranchita is stunned and hurt that her state wants to categorize her, a wildlife rescuer and educator who actually serves the IDNR's stated mission (see below), with the worst of the worst abusers of coyotes--the "hounders."

## XVI.    Defendants' Past Enforcement and Prosecution Causes Tranchita to Fear Further Enforcement and Prosecution

250.    According to statements made by Defendant Kwame Raoul during the state civil appeal, "to establish a protectable property interest, Tranchita has to hold both a fur-bearing mammal breeder permit and hound running Area permit, as required by the Wildlife Code."[66]

251.    However, the state appeal court subsequently found that a property interest is created if a person possesses a Fur-bearing Mammal Breeder permit. *Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 20 (May 1, 2020).

---

[66] Ex. R, p. 4.

252.    According to the state appeal court,

> Before the trial court was the fact that plaintiff did not have a valid
> fur-bearing mammal breeder permit at the time the IDNR seized her
> coyotes. Pursuant to the Wildlife Code, coyotes possessed without
> such a permit are contraband. Without a legitimate claim of
> entitlement to the property, plaintiff had no right to a property
> interest protected by due process when her coyotes were seized.
> *Khan*, 630 F.3d at 527. Therefore, the trial court properly denied
> her motion for a preliminary injunction. *Klaeren*, 202 Ill. 2d at 177.

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 24 (May 1, 2020).

253.    Tranchita is fearful that Defendants will seize Luna if she comes home to live with

Tranchita.

254.    During the state litigation, Tranchita informed IDNR that she was in possession of a

2019-2020 Fur-bearing Mammal Breeder permit.

255.    IDNR's response was,

> "Ms. Tranchita still does not have all the necessary permits. We
> have covered this issue both in the previous hearing and in, I believe,
> multiple statuses before the Court. Plaintiff's counsel knows this,
> but he still wants to make this representation that all she needs is a
> fur-bearing mammal's license. That's simply not the case and it's
> in the statute."[67]

256.    On June 22, 2020, Attorney Michela Huth, on behalf of Tranchita, emailed Defendant

Callahan at colleen.callahan@illinois.gov, with a request to inform Attorney Huth whether

Tranchita could possess a coyote with a Fur-bearing Breeder Mammal permit:

> Tomi Tranchita is my client. She lives in the State of Illinois. In
> light of the recent decision (attached) by the Illinois Appeals Court,
> I am writing to you to seek an answer as to whether the State of
> Illinois will permit Ms. Tranchita to possess a coyote(s) at this time.
> As stated by the Appellate Court (in First District Case No. No. 1-
> 19-1251, Tranchita v. IDNR, et al.,) "under Illinois law, a person
> must have a fur-bearing mammal breeder permit before possessing
> or raising a coyote."

---

[67] Ex J – See Exhibit A contained within Ex J - Transcript, 7: 10-17.

Ms. Tranchita currently possesses a 2020 fur bearing breeder mammal permit. I have attached it for your review.

I am in the process of beginning to draft a federal declaratory and injunction action, and believe it would be prudent to first ascertain whether or not a federal filing is even necessitated - based upon the Appellate Court's holding that a fur bearing mammal breeder permit is required to possess coyotes in the State of Illinois, and based upon the fact that Ms. Tranchita possesses a 2020 fur bearing permit..

I appreciate your time, and look forward to your response on whether Ms. Tranchita, who holds a 2020 fur bearing breeder mammal permit, can possess a coyote in Illinois.[68]

257.    Defendant Callahan did not respond to the June 22, 2020 email.

258.    On September 14, 2020, Attorney Michela Huth emailed Defendants.[69] That email was an attempt to resolve whether the State would agree that Tranchita could possess Luna in the State of Illinois. No response was received from the Defendants.

259.    Although Tranchita currently hold both a 2020-2021 Fur-bearing Mammal Breeder permit and a 2020-2021 Hound Running Area permit), she is fearful that IDNR will seize Luna again if Luna is at Tranchita's property.

260.    Luna is not doing well currently, and another seizure will kill her.

261.    Even though IDNR issued a 2020-2021 Hound Running Area permit to Tranchita, she is fearful that IDNR will determine that the mere possession of this permit is not sufficient to possess Luna.

262.    We know that based upon statements made by Defendants, it is their position that possession of a Fur-bearing Mammal Breeder permit alone will not keep Tranchita safe from prosecution and seizure of her property.

---

[68] Ex. U – June 22, 2020 Email from Attorney Michela Huth to Defendant Callahan.
[69] Ex. V – September 14, 2020 Email from Attorney Michela Huth to Defendant Callahan.

263.     One would hope the Defendants would respect the appeal court decision, which held that a Fur-bearing Mammal Breeder permit is required in the State of Illinois to possess a coyote.

264.     Despite the Appellate Court stating that a Fur-bearing Mammal Breeder permit authorizes her to possess coyotes, Tranchita fears she will be prosecuted again if she possesses Luna, and that Luna will be again seized.

265.     Despite IDNR allowing Tranchita to possess coyotes from 2011 to April 24, 2019 without a Hound Running Area permit, she is fearful of enforcement and prosecution if IDNR deems invalid her current 2020-2021 Hound Running Area permit.

266.     Tranchita cannot take the risk of bringing Luna home, Luna being seized again, and Tranchita being criminally prosecuted again.

267.     Tranchita is fearful that IDNR will revoke her 2020-2021 Hound Running Area permit.

268.     Tranchita is fearful that IDNR will seize Luna again if Luna is returned to her in Illinois.

**XVII.  Defendants' Policy -- Requiring ONLY Tranchita to Possess a Hound Running Area Permit -- Fails to Provide Explicit Standards, Encourages Serious Discriminatory Enforcement, and Has No Rational Basis**

269.     Defendants have enacted and implemented a policy whereby only Tranchita is required to hold a Hound Running Area permit to possess a coyote in Illinois.  The policy applies only to Tranchita.  IDNR allows, and has allowed, others to possess coyotes without holding a Fur-bearing Mammal Breeder Permit.  IDNR allows, and has allowed, others to possess coyotes without holding a Hound Running Area permit.  From 2011 until April 24, 2019, IDNR allowed Tranchita to possess coyotes without holding a Hound Running Area permit.

270.     IDNR did not consider Tranchita's coyotes to be contraband during the five years she possessed only the annual Fur-Bearing Mammal Breeder permit.  IDNR does not consider other captive coyotes in Illinois to be contraband because only Tranchita's coyotes were seized.  No

other person in the State of Illinois has had their coyotes seized for not possessing a Fur-bearing Mammal Breeder permit. No other person in the State of Illinois has had their coyotes seized based upon not possessing a Hound Running Area permit.

271. Defendants' requirement that Tranchita possess a Hound Running Area permit to possess coyotes has been applied exclusively to Tranchita. The requirement that Tranchita possess a Hound Running Area permit to possess coyotes is punitive and retaliatory.

272. IDNR ignores the equally plain language of the Illinois Criminal Code which allows her to possess coyotes because of her USDA Class C Exhibitor permit. See 720 ILCS 5/48-10(b).

273. Despite the Fur-bearing Mammal Breeder permit Statute stating that IDNR will not issue a Fur-bearing Mammal Breeder permit without a Hound Running Area permit, IDNR issued Tranchita a Fur-bearing Mammal Breeder permit for the five years, without her holding a Hound Running Area permit.

274. The Fur-bearing Mammal Breeder states that IDNR will not issue a Fur-bearing Mammal Breeder permit to any person unless that person holds a Hound Running Area permit. See 520 ILCS 5/3.25 ("No fur-bearing mammal breeder permits will be issued to hold, possess, or engage in the breeding and raising of striped skunks acquired after July 1, 1975, or coyotes acquired after July 1, 1978, except for coyotes that are held or possessed by a person who holds a hound running Area permit under Section 3.26 of this Act.). Since 2011, IDNR however has issued *seven* Fur-bearing Mammal Breeder permits to Tranchita even though it had not issued a Hound Running Area permit to her.

275. If IDNR chooses to issue a Fur-bearing Mammal Breeder permit to a person who does not hold a Hound Running Area permit, the fault lies with IDNR, not the person who possesses coyotes with only a Fur-bearing Mammal Breeder permit. I

42

276.     f IDNR issues a Fur-bearing Mammal Breeder permit without issuing a Hound Running Area permit, the fault lies with IDNR, not the person who possesses coyote.

277.     IDNR Officers do not know what permits are required.  IDNR Conservation Officer Suzanne Klemme was present at, and involved with, the 2011 inspection of Tranchita's property, and was also was present at, and involved with, the 2019 raid and seizure of Tranchita's four coyotes.  Officer Klemme inspected Tranchita's property in 2011 and was present when Tranchita was told that she was required to possess a Fur-bearing Mammal Breeder permit to possess coyotes.  The day after the 2019 raid and seizure of Tranchita's Coyotes, Officer Suzanne Klemme told Tranchita that Mooi was wrong about the educational permit and it was *not* what she needed, and that coyotes are not allowed in Illinois at all.

278.     After the raid and seizure of her coyotes, Tranchita applied for an educational permit, but IDNR has not issued her this permit, and she has not received communication from IDNR regarding this permit.

279.     IDNR has allowed many facilities and persons to possess coyotes without a Fur-bearing Mammal Breeder Permit.

280.     IDNR has allowed many facilities and persons to possess coyotes without a Hound Running Area permit.

281.     Less than a month after Tranchita's coyotes were seized, in May 2019, the very same IDNR District 4 (Counties: Cook & DuPage) where Mooi is assigned, and the district in which Tranchita's property sits, allowed an individual who possessed a red fox without a valid permit, to obtain a Fur-Bearing Mammal Breeder permit during the "random commercial inspection of a furbearing mammal breeder."  As set forth in "Illinois Conservation Police Bi-Weekly Report" for the weeks of May 16-31, 2019,

District 4 – Captain Jed Whitchurch (Counties: Cook & DuPage)
COOK COUNTY CPO Sanford and CPOT Elliot conducted a
random commercial inspection of a furbearing mammal breeder. It
was discovered that the individual was in possession of a red fox
without a valid permit to do so, and a citation was issued for the
violation. The individual gained compliance by purchasing a valid
furbearing mammal breeder permit upon completion of the
inspection.[70]

282.    The activity report set forth above, shows that a man with a fox was allowed to renew his

lapsed fur bearing permit, and his fox was not seized, and IDNR allowed him to keep his fox.

283.    An Illinois Conservation Police Field Report evidences that the fox was not seized, and

the owner was given a chance to obtain the Fur-bearing Mammal Breeder permit,

The purpose of this report is to document the random commercial inspection of Lee Torres, a fur-bearing mammal breeder in Chicago, IL on 05/19/2019. The inspection was conducted in accordance with department policy and at the directive of the Illinois Department of Natural Resources (IDNR) Headquarters in Springfield, IL.

On Friday, 05/17/2019, CPO Chase Sanford #531 spoke with Lee Torres (W/M, DOB ▮▮▮▮▮) via telephone regarding a random commercial inspection. Torres informed CPO Sanford that he was still in possession of a fox at his Chicago, IL address. Torres advised that he would be home on Sunday morning and agreed to meet with him then.

On Sunday, 05/19/2019, I, Conservation Police Officer (CPOT) Brian Elliot #560 and CPO Chase Sanford #531, conducted a random commercial inspection of Lee Torres, a fur-bearing animal breeder in Chicago, IL. Prior to the inspection, I was able to use the Illinois Department of Natural Resources (IDNR) Point-of-Sale (POS) system to determine Torres hadn't possessed a valid Fur-Bearing Mammal Breeder's Permit until shortly after our phone conversation on 05/17/2019. In fact, prior to renewing his permit, Torres' permit had been expired since 03/31/2018 (see attached POS record).

I contacted Torres at his residence ▮▮▮▮▮ at approximately 10:10 AM. CPO Sanford and I were in a fully-marked police vehicle and in full police uniform. Upon making contact, I discovered Torres had purchased the Fur-Bearing Mammal Breeder's Permit in 2017 before purchasing a marbled red fox to utilize as a house pet. At the time of the inspection the fox was still present at Torres' residence. I examined the fox, which was located in the backyard of the residence at the time of the inspection. I also examined the purchase receipt for the fox, which was purchased from "Tiny Tracks Exotic Animals" in Auburn, IN. The purchase date on the receipt was 06/02/2016 (see attached).

I advised Torres his permit to possess the fox had been expired for over a year. Torres stated he didn't know that he had to renew the permit annually. Torres renewed the permit on 05/17/2019 at approximately 2:51 PM (see attached valid permit), shortly after CPO Sanford had spoken with Torres via telephone.

[71]

[70] June 10, 2019 "Illinois Conservation Police Bi-Weekly Report" for the weeks of May 16-31, 2019, available at
https://www2.illinois.gov/dnr/LawEnforcement/Documents/ActivityReports/May%2016%20-%2031%20Bi-Weekly%20Report.pdf#search=ACTIVITY%20REPORT%20fox
[71] Ex. W – IDNR Field Report.

284.    Inexplicably, Tranchita was treated differently than the fox owner above, as her coyotes were seized, and she was not permitted to obtain the required permits at the time of the seizure.

285.    IDNR Violates its own Creed.  The guiding principles of IDNR's Law Enforcement Division contradict the swift and brutal raid and seizure of Tranchita's coyotes, and the prosecution against her for not possessing a $25.00 Fur-bearing Mammal Breeder Permit,

> *Creed:*
> *To serve, protect, and educate the citizens of, and visitors to, the state of Illinois in their outdoor recreational endeavors.*
>
> *To be a vigilant guardian of the natural resources, public safety, and homeland security of Illinois.*
>
> *To assist the public in their times of need; routine and emergency.*
>
> *To educate the inadvertent violator of conservation law, by taking an appropriate level of enforcement action to achieve this goal.*
>
> *To relentlessly pursue, with full statewide police authority, deliberate offenders and bring them before the courts for the administration of  justice.*
>
> *To maintain the highest level of professional standards, integrity, and conduct.*[72]

286.    IDNR's Mission Statement is "To manage, conserve and protect Illinois' natural, recreational and cultural resources, further the public's understanding and appreciation of those resources, and promote the education, science and public safety of Illinois' natural resources for present and future generations."[73]  However, the Wildlife Code makes no provision for rescuing injured wildlife despite IDNR's mission to protect the natural resources.  If a person wanted to rescue an injured or orphaned coyote pup, they would have to cease rescuing the coyote, and

---

[72] https://www2.illinois.gov/dnr/LawEnforcement/Pages/default.aspx (Emphasis added),
[73] https://www2.illinois.gov/dnr/about/Pages/MissionStatement.aspx#:~:text=To%20manage%2C%20conserve%20and%20protect,for%20present%20and%20future%20generations.

obtain a Fur-bearing Mammal Breeder permit, which according to Defendants, could not be issued without obtaining a Hound Running Area permit.

287. If a Hound Running Area permit is required of each person who obtains a Fur-bearing Mammal Breeders permit, the Hound Running Area Administrative Code would not state that a person possessing a Hound Running permit may obtain coyotes from "[i]ndividuals who hold a valid Fur-bearing Mammal Breeders permit * * * ." 17 Ill. Adm. Code Section 970.60 ("Sources of Captive-Reared and Wild Animals").

## XVIII.   A Life Forever Changed and Emptied of Joy and Purpose

288. The damage to Tomi Tranchita's life cannot be measured. Some assume she had a full life outside of her work with coyotes. Without an immediate family, however, it was her work with her coyotes that filled her life. Now that her animals are gone and her refuge is vacant, Tranchita has lost both her joy and her sense of purpose. Her connection to the community through education and her sense of contributing to society have vanished. Her rewarding professional pursuit and the animals she was so proud of are all gone. Her life's work swept away in one morning by a hell-bent State officer. Seventeen months after the raid and seizure, Tranchita's grief has not subsided. Friends have learned to not wish her "happy birthday" or "merry Christmas." A simple "Have a nice day" from patrons at her customer service job brings her to tears and she retreats to the restroom to compose herself. At her performance review, her supervisor commented on how sad she was and that it was not appropriate at work. Her supervisor offered to help her, but there is nothing anyone can do to ease her sadness. Tranchita sees her $25,000 enrichment-filled enclosures sit empty. Years of investment and heart-felt commitment have been destroyed, leaving Tranchita with an immeasurable sense of loss that can

never be replaced. Only the return of Luna to Tranchita can begin to heal the devastation and loss that Tranchita experiences every day. Luna is elderly and ailing, and time is of the essence.

## XIX.     The Elderly Luna is On Borrowed Time

289.    Luna has been separated from Tranchita for more than 17 months, with only rare, non-contact visits allowed by IDNR prior to being moved to Indiana Coyote Rescue Center, and with Luna in Indiana, Tranchita is separated by geography (145-mile distance from Tranchita's to Luna) and Covid 19 restrictions. At 14 years, Luna is on borrowed time. She is the sole survivor of the brutal April 24, 2019 raid and seizure. Luna was a happy and well-adjusted coyote while in the possession of Tranchita FOR 13 YEARS.[74]

290.    Tranchita desires to be reunited with her before Luna dies. Luna is now at the Indiana Coyote Rescue Center. Luna is under constant stress and is not doing well. She continually paces nervously and fearfully. Luna's enclosure is outside, but there ends the comparison with her habitat of 13 years. Luna is alone with no human or same-species interaction and with no enrichment. At 25 x 25 feet, her current enclosure is less than one-fifth the size of the 35 x 100-foot enclosure that waits for Luna on Tranchita's property. Even after 12 months, Luna's surroundings are still unfamiliar and unsafe to her. Luna paces incessantly and has worn a circular track in her enclosure,[75] a behavior recognized as unhealthy in any animal. She is constantly nervous and on vigil, fearing noises and any human approach. Only when Tranchita

---

[74] https://youtube/QH92EVIsOAI (Luna happy, engaging, and making eye contact, her normal calm happy self); https://youtube/-k-ZNF9wjig (Luna gets a toy); https://youtube/p3dU6-jVj4A (Luna getting some enrichment in Tranchita's care); https://youtube/FkBcfjf-h68 (Luna and Sandy getting treats); https://youtube/hQLu5a3hAkU (Luna greets Tranchita on a snowy morning).
[75] https://youtube/2A76GMPn4fQ; https://youtube/yeL6Q1zd9SE; https://youtube/z2N9BWdhZ84; https://youtube/PQBIVWJLl8I; https://youtube/0iLcypysOdM.

visits does Luna show trust in a human.  This is no way for an elderly 14-year-old coyote to live her last years and this constant stress will shorten what time she has left.  The recent construction at the Indiana facility has only exacerbated the stress she is experiencing.  Luna needs to be home with Tranchita in Illinois.

291.     Tranchita can drive the 145 miles to visit her only once every two or three weeks. The few hour-a-month visits are hardly a respite for Luna.  Additionally, Tranchita's visits are at the discretion of the Indiana refuge's owner, who barred her for three months this year during the COVID-19 pandemic and limits her visits in general.

292.     According to IDNR, "[f]ew coyotes live past 3 to 4 years of age. The oldest coyote found in a study conducted in Illinois during 1996 to 1997 was 13 years old."[76]  Many post-traumatic stress triggers at the Indiana facility exacerbate Luna's torment, including activity as unavoidable as road traffic, ongoing construction (to expand the operation) with heavy equipment, even people walking nearby.[77]  Luna no longer trusts humans, even the caretaker at the refuge.  It is no surprise, considering the terror caused by those who seized her 17 months ago and the poor-to-inhumane treatment she received from virtually every other human she has encountered since.

293.     Luna needs to come home to Illinois to live the last days of her life with Tranchita.  Luna has exceeded the average life span for a coyote but is not doing well in Indiana.  The single desire Tranchita has is to be reunited with Luna for her last days on this earth.  Luna is on borrowed time due to her age and the trauma of the seizure, and post-seizure trauma.  Luna is noticeably losing weight.

---

[76] See https://www2.illinois.gov/dnr/conservation/wildlife/Pages/Coyote.aspx
[77]  https://youtube/PQBIVWJLl8I; https://youtube/WdXRxkT-1Mw

294.    There are two petitions asking IDNR to let Luna be returned, that received over 49,000 signatures from concerned outraged and heartbroken citizens.[78]

295.    Two letters from the Indiana Coyote Rescue Center,  advocate for Luna's reunification with Tranchita in Illinois.[79]

296.    A letter from Tranchita's veterinarian, Kate Ball, DVM, advocates for Luna being returned to Tranchita.[80]

297.    Certified Animal Behaviorist Steve Dale has also observed Luna and has submitted his observations to this Court.[81]

298.    Videos taken of Tranchita's visits with Luna are sad to watch but are informative as to the stressful environment she is currently in, and Tranchita's bond with Luna.[82]

299.    Indiana Coyote Rescue Center has agreed to return Luna to Tranchita when a court orders that Luna can be reunited with Tranchita in Illinois.

---

[78] Change.org petition: https://www.change.org/p/save-wildlife-education-program-from-government-overreach-return-ambassador-animal-tortured-by-wildlife-agency; Lady Freethinker petition: https://ladyfreethinker.org/sign-bring-luna-the-rescue-coyote-home-from-distressing-imprisonment/?fbclid=IwAR0Wz_lrQYaWY-_MPGh5clZWcZIqrUoq0W6hD6U8nrrbna247dS38p8nYs4

[79] Exs. X and Y – Indiana Coyote Rescue Center letters.

[80] Ex. Z – Veterinarian Ball Letter.

[81] Ex. AA – Dale Report.

[82] November 22, 2019, Luna pacing at Indiana Rescue, slowing down for a moment to sniff Tranchita, but too uneasy to relax. A worn circular track from constant pacing is clearly seen, available at https://youtu.be/2A76GMPn4fQ; December 23, 2019-- Luna pacing at Indiana Rescue Center, available at "https://youtu.be/yeL6Q1zd9SE; January 6, 2020--Luna pacing at Indiana Rescue, available at https://youtu.be/z2N9BWdhZ84" https://youtu.be/z2N9BWdhZ84; February 2, 2020--Luna pacing and scared, watching human activity with fear (not curiosity). She does not know what to expect or what harm she could be in. She is fearful of everything and everyone except for Tranchita, available at https://youtu.be/PQBIVWJLl8I;  March 13, 2020--Luna trembling and scared of human activity at Indiana Rescue. Watch until the end, when she gets up and retreats scared, available at https://youtu.be/WdXRxkT-1Mw; March 13, 2020--Luna paces and does not interact with others howling at Indiana Rescue, available at https://youtu.be/0iLcypysOdM.

300.    Indiana Coyote Rescue Center will not release Luna to Tranchita until a Court declares

that Tranchita can legally possess a coyote in the State of Illinois.

## CAUSES OF ACTION

### COUNT I
### 42 U.S.C. § 1983
### VIOLATION OF THE EQUAL PROTECTION
### CLAUSE OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

301.    The allegations contained in the above preceding paragraphs are re-alleged and

incorporated by reference as if fully set forth herein.

302.    Tranchita's equal-protection claim is the class-of-one variety.

303.    Tranchita alleges that Defendants have singled her out for selective enforcement for

irrational and improper reasons.

304.    Defendants are responsible for the violation of Tranchita's constitutional right to equal

protection because of their policy which requires ONLY Tranchita to hold a Hound Running

Area permit to possess a coyote in Illinois.

305.    Despite the fact that IDNR has stated in litigation that Illinois law requires the issuance of

both the Fur-bearing Mammal Breeder Permit and the Hound Running Permit, in order to

possess coyotes, no one has been able to find even one instance where IDNR has issued both a

Fur-bearing Mammal Breeder Permit and a Hound Running Permit to a single person or entity

that possessed a coyote in 2019 or 2020.

306.    Defendants have no rational basis for requiring Tranchita to hold both a Fur-bearing

Mammal Breeder permit and a Hound Running Area permit when the Defendants have not

imposed that requirement upon any other similarly situated persons.

307.     Defendants have no rational basis for their actions in treating Tranchita differently than the others who are similarly situated.

308.     The method or means employed by Defendants is not rationally related to the stated goal of the Wildlife Act. 520 ILCS 5/1.3 ("providing public recreation and controlling wildlife populations.").

309.     The method or means employed by Defendants is not rationally related to the purpose of the legislation.

310.     Defendants are selectively enforcing this dual permit requirement.

311.     Defendants dual permit requirement does not achieve the State of Illinois' stated objectives.

312.     The degree of similarity between Tranchita and the comparators is high, in that the comparators and Tranchita have possessed coyotes in the State of Illinois without holding a Hound Running Area permit.

313.     Tranchita is the only person in the state of Illinois who is being required to obtain a Hound Running Area permit to possess a coyote.

314.     No rational person could regard the circumstances of Tranchita to differ from those of the comparators to a degree that would justify the differential treatment on the basis of a legitimate government policy.

315.     The similarity in circumstances and difference in treatment are sufficient to exclude the possibility that Defendants acted on the basis of a mistake.

316.     A prudent person would think that comparators are similarly situated.

317.     Tranchita, compared with the comparators, is being selectively treated.

318.     There is no compelling state interest being protected by treating Tranchita differently.

319.    If there were such a compelling interest, it could surely be protected in a less burdensome way, than by barring Tranchita from being reunited with Luna in Illinois.

320.    Defendants are violating Tranchita's right to Equal Protection under the Constitution of the United States.

321.    The unconstitutional policy is the moving force behind the deprivation of Tranchita's constitutional rights.

322.    Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.


## COUNT II
## CONFLICT PREEMPTION
### (Animal Welfare Act v. Hound Running Area permit)

323.    The allegations contained in the above preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

324.    IDNR's requirement that a Hound Running Area permit must be held to possess a coyote, is preempted based upon the conflict preemption doctrine.

325.    It is impossible for Tranchita to comply with both federal and state law.

326.    The policy requiring Tranchita to run hounds to possess a coyote stands as an obstacle to the accomplishment and execution of federal purposes and objectives of the Animal Welfare Act.

327.    The Animal Welfare Act, 7 U.S.C. § 2131-2159 ("the Act"), regulates the transportation, purchase, sale, housing, care, handling, and treatment of animals, with the intent of fostering humane treatment and care of animals and protecting animal owners from theft of their animals. See 7 U.S.C. § 2131.

328.    The purpose of the Animal Welfare Act is to foster humane treatment and care of animals and to protect the owners of animals from the theft of their animals. 7 U.S.C. § 2131.

329. The State's policy of requiring a person to possess a Hound Running Area permit to possess a coyote must give way because it conflicts with federal law.

330. It is physically impossible for Tranchita to comply with both state and federal law.

331. The Secretary of Agriculture is authorized to "promulgate standards to govern the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors,'" 7 U.S.C. § 2143(a)(1).

332. The Secretary of Agriculture 'shall not prohibit any State (or a political subdivision of such State) from promulgating standards in addition to those standards promulgated by the Secretary." 7 U.S.C. § 2143(a)(8).

333. Defendants' policy requiring a person to run hounds to possess a coyote is not a "standard in addition to those standards promulgated by" USDA.

334. Defendants' policy requiring a person to run hounds to possess a coyote is totally contrary to the humane standards promulgated by Congress under the Animal Welfare Act.

335. Defendants' policy requiring Tranchita to obtain a Hound Running Area permit is in direct conflict with the Animal Welfare Act.

336. Defendants are responsible for the violation of Tranchita's constitutional rights because of their policy which requires ONLY Tranchita to hold a Hound Running Area permit to possess a coyote in Illinois.

337. The unconstitutional policy is the moving force behind the deprivation of Tranchita's constitutional rights.

338. Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.

## COUNT III

339.    The allegations contained in the above preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

340.    At the time Defendants enacted their policy in 2019, which required only Tranchita to hold both a Fur-bearing Mammal Breeder permit and a Hound Running Area permit, Defendants failed to give fair notice of the conduct that is prohibited -- that being that, according to them, Tranchita is required to hold a Hound Running Area permit to possess a coyote in Illinois.

341.    The policy requiring a person to hold a Hound Running Area permit to possess a coyote is impermissibly vague on its facts, and it fails to provide notice as to what behavior is criminalized which also invites arbitrary and discriminatory enforcement.

342.    IDNR's policy reaches a substantial amount of constitutionally protected conduct, including, but not limited to impinging upon First Amendment Rights.

343.    The Fur-bearing Mammal Breeder statute does not provide fair notice because it does not provide explicit standards to enable a person to conform her conduct to that law.

344.    Defendants' policy does not provide fair notice because it does not provide explicit standards to enable a person to conform her conduct to that law.

345.    The Fur-Bearing Mammal Breeder statute states Coyotes are not allowed unless a person possesses a Hound Running Area permit.

346.    The Hound Running Area statute, however, states that it is only applicable if a person desires to run hounds after coyotes.

347.    If a person does not desire to run hounds after a coyote, they cannot therefore possess coyotes, according to Defendants' policy.

348. Defendants are responsible for the violation of Tranchita's constitutional rights because of their policy which requires ONLY Tranchita to hold a Hound Running Area permit to possess a coyote in Illinois.

349. The unconstitutional policy is the moving force behind the deprivation of Tranchita's constitutional rights.

350. Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.

**COUNT IV**
**42 U.S.C. § 1983**
**VIOLATION OF FREE EXERCISE CLAUSE OF THE**
**FIRST AMENDMENT TO THE U.S. CONSTITUTION**
**(Freedom of Personal Conscience)**

351. The allegations contained in the above preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

352. Tranchita has a right to freedom of personal conscience.

353. Requiring her to possess a permit to engage in a cruel practice, is contrary to her religious, moral, and ethical beliefs.

354. Defendants' policy requiring Tranchita to desire to run hounds and requiring her to hold a Hound Running Area permit, is overbroad because it impinges upon First Amendment rights.

355. The Fur-bearing Mammal Breeder statute is overbroad because it impinges upon First Amendment Rights.

356. The requirement that Tranchita must hold a hound running permit to possess a coyote deters her from engaging in First Amendment religious belief.

357. There is no compelling state interest in requiring a person to desire to run hounds when it is against their religious belief.

358.     The policy and statute require conduct that Tranchita's religion proscribes.

359.     Defendants' policy and the Fur-bearing Mammal Breeder and Hound Running Area statutes are not supported by any rational basis.

360.     The policy and statutes will significantly compromise recognized First Amendment protections of parties not before the Court.

361.     Defendants are responsible for the violation of Tranchita's constitutional rights because of their policy which requires ONLY Tranchita to hold a Hound Running Area permit to possess a coyote in Illinois.

362.     The unconstitutional policy is the moving force behind the deprivation of Tranchita's constitutional rights.

363.     Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.

## COUNT V
## 42 U.S.C. § 1983
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE
## FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION

364.     The allegations contained in the above preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

365.     Defendants have deprived Tranchita of the benefits of the Fur-bearing Mammal Breeder permit by creating a policy requiring a Hound Running Area permit, which applies only to Tranchita, and which does not provide any due process by which she can dispute this irrational policy.

366.     The permit which Tranchita has a right to the benefits of, is her 2020 Fur-bearing Mammal Breeder Permit.

367.    There exist three reasons for the entitlement, (1) custom; (2) state appeal decision; and (3) the plain language of the statute.

368.    Tranchita has no avenue by which to prevent another seizure if she brings Luna back to her property.

369.    The State will seize Luna again, as is clearly shown through the correspondences by the statements made by Defendants during the state litigation.

370.    The possibility of permanent erroneous deprivation is significant if Tranchita brings Luna to Illinois without a declaration from this Court that she is permitted to possess a coyote as long as she holds a current Fur-bearing Mammal Breeder permit.

371.    There is no burden upon Defendants, as they have allowed many others to possess coyotes without possessing a Hound Running Area permit.

372.    There is no burden upon Defendants, as they have allowed others to possess coyotes without the Fur-bearing Mammal Breeder permit.

373.    There is no burden upon Defendants, as they have historically allowed Tranchita to possess coyotes without possessing a Hound Running Area permit.

374.    The State and Tranchita had a mutually explicit understanding that she could possess coyotes in the State of Illinois provided she held a Fur-bearing Mammal Breeder permit.

375.    Because Tranchita currently holds a Fur-bearing Mammal Breeder permit, and because IDNR has issued her that permit, she should be allowed to possess a coyote in Illinois.

376.    Tranchita has a legitimate claim of entitlement to the continued enjoyment of the benefits of the Fur-bearing Breeder Mammal permit, that being possessing a coyote.

377.    Tranchita is entitled to due process before deprivation of this interest.

378.     However, Tranchita will receive no due process as there is no mechanism by which to stop the realistic threat of enforcement and another seizure.

379.     Defendant has no opportunity to contest a seizure of Luna because no hearing is available to do so, prior to the deprivation.

380.     Defendants are responsible for the violation of Tranchita's constitutional rights because of their policy which requires ONLY Tranchita to hold a Hound Running Area permit to possess a coyote in Illinois.

381.     The unconstitutional policy and statutes are the moving force behind the deprivation of Tranchita's constitutional rights.

382.     Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.


**COUNT VI**
**42 U.S.C. § 1983**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE**
**FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**
**(Substantive Due Process)**

383.     The allegations contained in the above preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

384.     Tranchita has a property interest in Luna because she is a federally licensed Exhibitor.

385.     Tranchita has a protected interest through the entitlement in a Fur-bearing Mammal Breeder permit.

386.     Defendants' policy and practice of requiring a person to hold a Hound Running Area permit to possess a coyote in Illinois is arbitrary and irrational and bears no relationship to a legitimate government interest.

387.    Defendants have deprived Tranchita of the benefits of the Fur-bearing Mammal Breeder permit by creating a policy requiring a Hound Running Area permit, which applies only to Tranchita, and which does not provide any substantive due process by which she can dispute this irrational policy.

388.    The permit that Tranchita has a right to the benefits of, is her 2020-2021 Fur-bearing Mammal Breeder permit.

389.    There are three reasons for the entitlement, (1) custom; (2) appeal, and (3) the plain language of the statute.

390.    Tranchita has no avenue by which to object to the threat of seizure if she brings Luna back to her property.

391.    The State will seize Luna again, as is clearly shown through the correspondences from IDNR to Tranchita's state litigation attorney.

392.    The possibility of permanent erroneous deprivation is significant if Tranchita brings Luna to Illinois without a declaration from this Court that she is permitted to possess a coyote with only the possession of a Fur-bearing Mammal Breeder permit.

393.    The possibility of permanent erroneous deprivation is significant if Tranchita brings Luna to Illinois without an injunction barring Defendants from seizing Luna again.

394.    There is no burden upon the state as it has allowed many others to possess coyotes without holding a Hound Running Area permit.

395.    There is no burden upon the state as it has allowed many others to possess coyotes without holding a Fur-bearing Mammal Breeder permit.

396.    There is no burden upon the state as it has allowed Tranchita to possess coyotes without holding a Hound Running Area permit.

397.    The State and Tranchita had a mutually explicit understanding that she could possess coyotes in the State of Illinois if she possessed a Fur-bearing Mammal Breeder Permit.

398.    As Tranchita currently holds such a permit, and as IDNR issued her that permit, she should be allowed to possess a coyote in Illinois.

399.    Tranchita has a legitimate claim of entitlement to the continued enjoyment of the benefits of the Fur-bearing Mammal Breeder permit, that being possessing a coyote.

400.    Tranchita is entitled to due process before deprivation of this interest.

401.    However, she will receive no due process as there is no mechanism by which to ensure that occurs prior to the realistic threat of seizure

402.    Defendants' policy requiring a person who possesses a coyote to hold a Hound Running Area permit is arbitrary and irrational and has no relationship to a legitimate governmental interest.

403.    Defendants are responsible for the violation of Tranchita's constitutional rights because of their policy which requires ONLY Tranchita to hold a Hound Running Area permit to possess a coyote in Illinois.

404.    The unconstitutional policy is the moving force behind the deprivation of Tranchita's constitutional rights.

405.    Defendants conduct is intended to injure Tranchita is a way unjustifiable by any government interest.

406.    Tranchita does not seek any damages from Defendants in their individual capacity *as Ex Parte Young* defendants.


**REQUEST FOR RELIEF**

Plaintiff respectfully requests the following relief:

a. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that if Tranchita holds a current Fur-bearing Mammal Breeder permit, she is authorized under Illinois law to possess Luna, the coyote.

b. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that Defendants' policy requiring Tranchita to hold a Hound Running Area permit is preempted by the federal Animal Welfare Act.

c. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that Defendants policy requiring Tranchita to hold a Hound Running Area permit violates the First Amendment to the United States Constitution.

d. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that Defendants policy requiring Tranchita to hold a Hound Running Area permit violates the Fourteenth Amendment to the United States Constitution.

e. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that Defendants are violating their own policy by allowing others to possess coyotes without holding a Fur-bearing Mammal Breeder permit.

f. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Rule 57 declare that Defendants are violating their own policy by allowing others to possess coyotes without holding a Hound Running Area permit.

g. Issue a preliminary injunction, later to be made permanent, enjoining Defendants from enforcing their policy requiring Tranchita to hold a Hound Running Area permit.

h. Issue a preliminary injunction, later to be made permanent, enjoining Defendants from seizing Luna if Tranchita holds a current Fur-bearing Mammal Breeder permit.

i.  Order that a jury determine all issues not settled by this Court;

j.  Award Tranchita her costs and attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988;

k.  Award such other relief as the Court deems just.


DATE:  October 7, 2020

Respectfully submitted,

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL
(NY Reg. No. 1637677)
545 E. Jericho Turnpike
Huntington Station, New York 11746
Office Ph: 631 629 8111
Cell Ph: 516 319 0816
Email: Richard@thedoglawyer.com
*Attorney for Plaintiff*

**VERIFICATION OF COMPLAINT
PURSUANT TO 28 U.S.C. § 1746**

I declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge.

Executed on October ___ 6, 2020

Tomi Tranchita