**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TOMI TRANCHITA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-5956 |
| | ) | |
| v. | ) | Hon Sara L. Ellis |
| | ) | |
| KWAME RAOUL, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS CALLAHAN, FISCHER, AND MOOI'S MEMORANDUM IN
OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
<u>ORDER AND PRELIMINARY INJUNCTION</u>**

KWAME RAOUL
Attorney General of Illinois

Mary A. Johnston
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, Illinois 60601

## TABLE OF CONTENTS

INTRODUCTION …………………………………………………………………………..1

BACKGROUND …………………………………………………………………………... 1

LEGAL STANDARD …………………………………………………………………..….. 3

I.     PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS.......................................... 4

   A.  Plaintiff's Claims are barred by the *Rooker-Feldman* Doctrine. ........................................ 5

   B.  Plaintiff is unlikely to succeed on her "class of one" Equal Protection claim..................... 6

   C.  The Wildlife Code is not preempted by federal law. .......................................................... 9

   D.  Plaintiff has not stated a claim that the Wildlife Code infringes upon the Free Exercise
   clause of the First Amendment. ............................................................................................. 10

   E.  Plaintiff cannot state a viable substantive or procedural due process claim...................... 12

      1.   The permit revocation process that Plaintiff will be afforded satisfies the procedural due
      process requirements............................................................................................................. 14

      2.   Revoking a permit that was issued in error is not arbitrary or irrational and, as such,
      there is no substantive due process violation....................................................................... 16

II.    PLAINTIFF HAS NOT SHOWN THAT SHE WILL BE SUBJECT TO IRREPARABLE
HARM WITHOUT JUDICIAL INTERVENTION. .................................................................... 18

III.     THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF THE STATE. ....... 18

## TABLE OF AUTHORITIES

**Cases**

*East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700 (7th Cir. 2005) ................................................................................................................................ 18

*Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371 (1978) ........................................ 17

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ................................................ 12

*Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821 (7th Cir. 1998) .................. 3, 4, 19

*Campos v. Cook County*, 932 F.3d 972 (7th Cir. 2019)............................................................. 16

*Catinella v. Cty. of Cook*, 881 F.3d 514 (7th Cir. 2018)............................................................. 16

*Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769 (7th Cir. 2013)......... 7

*Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 626 (N.D. Ill. 2017) ...................... 3

*Chicago United Indus. v. City of Chicago*, 445 F.3d 940 (7th Cir. 2006)..................................... 4

*Chicago v. Miller*, 188 N.E.2d 694 (1963) ................................................................................ 15

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)....................... 10

*Daniels v. Williams*, 474 U.S. 327, 330 (1986) ....................................................................... 13

*Davidson v. Cannon*, 474 U.S. 344 (1986)............................................................................... 13

*DeHart v. Town of Austin, Ind.*, 39 F.3d 718 (7th Cir. 1994)...................................................... 9

*Despard v. Bd. of Trustees of Indiana Univ.*, No. 1:14-CV-1987, 2015 WL 4946112 (S.D. Ind. Aug. 18, 2015) .......................................................................................................................... 7

*Dufauchard v. Ward*, 51 Ill. App. 2d 42, 200 N.E.2d 833 (1964) ............................................. 12

*Emp't Div. v. Smith*, 494 U.S. 872 (1990) ................................................................................ 10

*Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012) ...................................................................... 8

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005)................................... 5

*Frey Corp. v. City of Peoria Ill.*, 735 F.3d 505 (7th Cir. 2013).................................................. 17

*GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357 (7th Cir. 2019)..................................... 3

*Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991 (7th Cir. 2008)................................. 12

*Gottlieb v. Vill. of Irvington*, 69 F. Supp. 2d 553 (S.D.N.Y. 1999)............................................. 8

*Gutierrez v. Gonzalez*, 458 F.3d 688= (7th Cir. 2006) ............................................................. 15

*Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014) .......................................................................... 5

*Ill. Bible Colleges Assoc. v. Anderson*, 870 F.3d 631 (7th Cir. 2017) ....................................... 10

*Irvan v. Cooper*, No. 16-CV-4881, 2017 WL 449179 (N.D. Ill. Feb. 2, 2017)............................ 5

*Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429 (7th Cir. 1986) ............................................ 5

*LeClair v. Saunders*, 627 F.2d 606 (2d Cir. 1980) .................................................................... 9

*Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015)............... 11

*Locke v. Davey*, 540 U.S. 712 (2004) ...................................................................................... 11

*Maryland v. King*, 567 U.S. 1301 (2012) ................................................................................. 19

*Matamoros v. Grams*, 706 F.3d 783 (7th Cir. 2013) ................................................................ 15

*Mathews v. Eldridge*, 424 U.S. 319 (1976)............................................................................... 14

*Mazurek v. Armstrong*, 520 U.S. 968 (1997) ............................................................................. 3

*McDonald v. Vill. of Winnetka*, 371 F.3d 992 (7th Cir. 2004)..................................................... 6

*Medrano v. Ocwen Loan Serv., LLC*, 2017 WL 413614 (N.D. Ill. Jan. 31, 2017)....................... 6

*Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765 (7th Cir. 2011) ........................................ 4, 19

*Morissey v. Brewer*, 408 U.S. 471 (1972).................................................................................. 14

*Muczynski v. Lieblick*, No. 10-CV-0081, 2010 WL 3328203 (N.D. Ill. Aug. 19, 2010)............... 7

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020)............................................................................. 3

Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs., 337 F. Supp. 3d 308 (S.D.N.Y. 2018) ................................................................................. 19
*Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722 (7th Cir. 1998) ......... 19
*Proft v. Madigan*, 340 F. Supp. 3d 683 (N.D. Ill. 2018) ............................................................. 19
*Proft v. Raoul*, 944 F.3d 686 (7th Cir. 2019) ............................................................................ 19
*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ................................................................ 9
*Scariano v. Justices of Supreme Court of State of Ind.*, 38 F.3d 920 (7th Cir. 1994) ................ 17
*St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616 (7th Cir. 2007) ........... 10, 11
*Sykes v. Cook Cnty Circuit Court Probate Div.*, 837 F.3d 736  (7th Cir. 2016) ........................... 5
*Tranchita v. Dep't of Natural Res.*, No 19-1251, 2020 WL 2097351 (Ill. App. 1st) ................. 12
*Trump v. Int'l Refugee Assistance*, 138 U.S. 353 (2017) ............................................................ 19
*Tun v. Whitticker*, 398 F.3d 899 (7th Cir. 2005) ....................................................................... 16
*USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019) ......................................................................................................................... 3
*Vision Church v. Vill. of Long Grove*, 468 F.3d 975 (7th Cir. 2006) ........................................ 11
*W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886 (7th Cir. 1958) ........................................ 4
*Washington v. Glucksberg*, 521 U.S.  702 (1997) ..................................................................... 16
*Williams v. Office of Chief Judge of Cook County Illinois*, 839 F.3d 617 (7th Cir. 2016) .......... 15
*Winter v. Natural Res. Def. Council*, 555 U.S. 7 (2008) ........................................................ 3, 4
*Zahra v. Town of Southold*, 48 F.3d 674 (2d Cir. 1995) ............................................................. 8

**Statutes**
50 ILCS 5/1.2(c) ........................................................................................................................ 12
520 ILCS 5/1 *et seq.* ................................................................................................................... 1
520 ILCS 5/1.2g ........................................................................................................................ 13
520 ILCS 5/3.22 ......................................................................................................................... 7
520 ILCS 5/3.25 ..................................................................................................................... 1, 13
520 ILCS 5/3.33 ....................................................................................................................... 15
7 U.S.C. § 2156(f)(1) ................................................................................................................. 10

**Rules**
Fed. R. Evid. 101 ........................................................................................................................ 8
Fed. R. Evid. 201 ........................................................................................................................ 8
Fed. R. Evid. 902 ........................................................................................................................ 8

## INTRODUCTION

Plaintiff filed her Complaint on October 7, 2020, alleging that her constitutional rights were violated by Defendants due to the seizure of her coyote, Luna, by the Illinois Department of Natural Resources ("IDNR"). *See* ECF No. 1. Luna was removed from Plaintiff's residential property on or about April 24, 2019, because Plaintiff did not hold either of the permits required to keep a coyote under the Wildlife Code, 520 ILCS 5/1 *et seq*. Then, on October 14, 2020, Plaintiff filed this motion for a temporary restraining order and mandatory preliminary injunction. ECF No. 5-6.

In her motion, Plaintiff alleges that the removal of the coyote violated the Equal Protection clause of the Fourteenth Amendment, that Illinois state law is preempted by federal law, that Illinois law violates the Free Exercise Clause of the First Amendment, and that her substantive and procedural due process rights under the Fourteenth Amendment were violated by IDNR. *See* ECF No. 6. Plaintiff seeks a mandatory injunction requiring IDNR to allow her to keep Luna on her residential property that does not meet the requirements to house a coyote pursuant to Illinois law. *Id.* However, Plaintiff is unlikely to succeed on the merits of her claims and the public interest does not favor allowing individuals to keep wild animals on residential property. Therefore, this Court should deny Plaintiff's motion.

## BACKGROUND

Since 2006, Plaintiff has been raising coyotes at her home in a residential neighborhood in Tinley Park. *Id.* at 2. Pursuant to the Wildlife Code, to legally possess a coyote in the state of Illinois, an individual must have a fur-bearing mammal breeder permit and a hound running area permit. 520 ILCS 5/3.25. In 2019, Sergeant Mooi became aware that Plaintiff had coyotes on her property without having either permit. ECF No. 6 at 3-4. As such, Sergeant Mooi obtained a

search warrant and on April 24, 2019, IDNR conducted a search of Plaintiff's property and seized the four coyotes on Plaintiff's property. *Id.* at 2. Plaintiff plead guilty to possessing the coyotes without the proper permit in September 2019. *Id.* at 4. Currently, the surviving coyote, Luna, is 15 years old and living at the Indiana Coyote Rescue Center in Burlington, Indiana. *Id.*

In 2019, after the coyotes were seized, Plaintiff obtained a fur-bearing mammal breeder permit and a hound running area permit. Due to an error with the IDNR online payment system, Plaintiff was erroneously issued a 2019-2020 hound running area permit without submitting the required paperwork. Declaration of Renee Snow at ¶ 2, attached hereto as Exhibit 1 . When IDNR learned of this mistake it personally served Plaintiff with a letter informing her that the permit was issued in error, that it would be revoked, that her money would be refunded, and that she could request a hearing to appeal the revocation within 30 days. *Id.* at ¶3. Plaintiff requested a hearing and submitted paperwork providing information about the relevant property. *Id.* at ¶ 4. After reviewing the required paperwork, the application was denied because Plaintiff's property did not meet the requirements for a hound running area. *Id.* at ¶ 5. After the application was denied, Plaintiff withdrew her appeal. *Id.* at ¶ 6.

Then, in 2020, due to a technological error where the IDNR online payment portal re-opened to the public, Plaintiff was able to make payment and received a 2020-2021 hound running area permit. *Id.* at ¶ 7. As this was only done online and Plaintiff did not submit any documents showing that she satisfies the requirements to hold a hound running area permit, no one at IDNR was aware that the permit had been issued until Plaintiff filed this motion. *Id.* at ¶ 8. The statutory requirements to hold a hound running area permit have not changed since Plaintiff's 2019-2020 permit was revoked and Plaintiff has admitted that her property has not

changed in the past year so as to satisfy the requirements. As such, while Plaintiff currently holds a 2020-2021 hound running area permit, she does not meet the requirements to have the permit.

## LEGAL STANDARD

"The standards for granting a temporary restraining order and a preliminary injunction are the same." *USA-Halal Chamber of Commerce, Inc. v. Best Choice Meats, Inc.*, 402 F. Supp. 3d 427, 433 n.5 (N.D. Ill. 2019). Each is an "extraordinary and drastic remedy," *Checker Car Club of Am., Inc. v. Fay*, 262 F. Supp. 3d 621, 626 (N.D. Ill. 2017), that is "never awarded as of right" and "never to be indulged in except in a case clearly demanding it." *Orr v. Shicker*, 953 F.3d 490, 501 (7th Cir. 2020). Injunctive relief "should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original); *see also Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998).

The plaintiff "must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Illinois Republican Party v. Pritzker*, No. 20-2175, 2020 WL 5246656, at *2 (7th Cir. Sept. 3, 2020), *quoting Winter v. Nat'l Resources Defense Council*, 555 U.S. 7, 20 (2008). If the plaintiff satisfies all these requirements, then the court must weigh the harm that the plaintiffs will incur without an injunction against the harm to the defendant if one is entered, and "consider whether an injunction is in the public interest." *GEFT Outdoors, LLC v. City of Westfield*, 922 F.3d 357, 364 (7th Cir. 2019) (internal quotations omitted). This analysis is done on a "sliding scale"— if the plaintiffs are less likely to win on the merits, the balance of harms must weigh more heavily in their favor, and vice versa. *Id.* (internal quotations omitted). The court should pay "particular regard for the public consequences in employing the

3

extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.

Here, Plaintiff's burden is even greater than usual because, rather than seeking to preserve the *status quo*, she seeks *mandatory* interim relief directing IDNR to allow Plaintiff to transport Luna across state lines and keep Luna at her residential property. *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 783 (7th Cir 2011) (preliminary injunctions are "often seen as a way to maintain the *status quo* until merits issues can be resolved at trial."). Mandatory injunctions are "rarely issued," interlocutory mandatory injunctions are "even more rarely issued," and neither should be issued "except upon the clearest equitable grounds." *W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958); *see also Graham v. Med. Mut. of Ohio*, 130 F.2d 293, 295 (7th Cir. 1997) ("[M]andatory preliminary writs are ordinarily cautiously viewed and sparingly issued."); *Chicago United Indus. v. City of Chicago*, 445 F.3d 940, 945-46 (7th Cir. 2006).

Not only does Plaintiff seek mandatory relief, the interim injunction she requests in her motion would give her substantially all the relief she seeks through this lawsuit. In such cases, the plaintiff's burden is even higher. *See, e.g.*, *Boucher*, 134 F.3d at 827 n.6 ("A preliminary injunction that would give the movant substantially all the relief he seeks is disfavored, and courts have imposed a higher burden on a movant in such cases."); *W.A. Mack*, 260 F.2d at 890 ("A preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

## **ARGUMENT**

## I.      **PLAINTIFF IS UNLIKELY TO SUCCEED ON THE MERITS.**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits." *Winter*, 555 U.S. at 20. As the Seventh Circuit recently explained, "a possibility of

4

success is not enough," and the Supreme Court has expressly disapproved the "better than negligible" standard. *Illinois Republican Party*, 2020 WL 5246656, at *2. A plaintiff seeking preliminary relief "bears a significant burden" and must make a "strong showing" that it is likely to succeed on the merits. *Id*. While this showing does not require proof by a preponderance of the evidence, it "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. Moreover, when there are "two equally credible versions of the facts the court should be highly cautious in granting an injunction without the benefit of a full trial." *Lawson Prods., Inc. v. Avnet, Inc*., 782 F.2d 1429, 1440 (7th Cir. 1986) (citation omitted).

Here, Plaintiff fails to establish a likelihood of success on the merits of any of her claims.

### A.    Plaintiff's Claims are barred by the *Rooker-Feldman* Doctrine.

First, Plaintiff has little chance of success on the merits because her claims are barred under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by the state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).

Here, Plaintiff is, essentially, asking this Court to overrule the Illinois appellate court's decision on her state court motion for a temporary restraining order/preliminary injunction. "[I]nterlocutory orders entered prior to the final disposition of state court lawsuits are not immune from the jurisdiction-stripping powers of *Rooker-Feldman*." *Sykes v. Cook Cnty Circuit Court Probate Div.*, 837 F.3d 736, 742 (7th Cir. 2016); *Harold v. Steel*, 773 F.3d 884, 887 (7th Cir. 2014).  Recent Northern District cases recognize that the Seventh Circuit's jurisprudence on this issue has evolved, with the latest Seventh Circuit cases holding that the *Rooker-Feldman* doctrine applies to interlocutory orders.  *See Irvan v. Cooper*, No. 16-CV-4881, 2017 WL 449179, at *2 (N.D. Ill. Feb. 2, 2017); *Medrano v. Ocwen Loan Serv.*, LLC, 2017 WL 413614, at

*3-5 (N.D. Ill. Jan. 31, 2017). While the Seventh Circuit's recent statement in *Kowalski* that *Rooker-Feldman* "does not apply independently to interlocutory orders" muddies the waters a bit, *Kowalski* acknowledges *Harold* with a "but see" reference and does not overrule *Harold* or *Sykes*. *Kowalski*, 2018 WL 3120205, at *3. Thus, the better reading of the case law on this issue is that *Rooker-Feldman* can apply to interlocutory orders, at least when the case would require the federal court to sit as an appeals court for the state court. Here, Plaintiff is clearly attempting to relitigate her state court case because she is unhappy with the result. As such, this Court lacks jurisdiction over Plaintiff's claims.

**B.    Plaintiff is unlikely to succeed on her "class of one" Equal Protection claim.**

In Count I, Plaintiff alleges that IDNR violated her rights under the Equal Protection clause of the Fourteenth Amendment because there are other individuals or organizations that have had coyotes without the hound running area permit. ECF No. 6 at 6-7. Because Plaintiff does not allege that she is a member of a protected class, this is a "class of one" equal protection claim. A "class of one" equal protection claim may be brought where "(1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). While there is no "precise formula to determine whether an individual is similarly situated to comparators," "[i]t is clear that similarly situated individuals must be very similar indeed." *Id*. at 1002. The "similarly situated" requirement is critical because "at their heart, equal protection claims, even 'class of one' claims, are basically claims of discrimination." *Id*. at 1009. Here, Plaintiff fails to allege either element of a "class of one" equal protection claim.

Plaintiff alleges that she knows of ten people or entities who have, or have had, coyotes under their care. ECF No. 6 at 6. However, this allegation alone does not show that any of these people or entities are similarly situated to Plaintiff for purposes of a "class of one" equal protection claim. To establish that any other individual is similarly situated, Plaintiff would need to show other individuals that had one or more coyotes living on residential property as pets, permanently, with no intention of releasing them into the wild, and that IDNR knew about these individuals. Instead, Plaintiff has made conclusory allegations about people or entities that she claims had coyotes at some point in time. *Id.*

As the Seventh Circuit has observed: "saying the magic words is not enough: [Plaintiffs] must offer 'further factual enhancement.'" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (affirming dismissal of equal protection claim where plaintiff alleged in his complaint only that unnamed "similarly situated" individuals were treated differently); *see also Muczynski v. Lieblick*, No. 10-CV-0081, 2010 WL 3328203, at *3 (N.D. Ill. Aug. 19, 2010) (dismissing equal protection claim in part because conclusory allegations of similarly situated individuals were insufficient); *Despard v. Bd. of Trustees of Indiana Univ.*, No. 1:14-CV-1987, 2015 WL 4946112, at *7 (S.D. Ind. Aug. 18, 2015) ("[T]o survive a motion to dismiss, the Plaintiff needed to allege facts regarding at least one similarly situated comparator.").

However, Plaintiff does not understand that there are other ways to legally keep coyotes other than possessing a fur bearing mammal breeder permit and hound running area permit— zoos, rehabilitation facilities, and scientific facilities may also legally keep coyotes under certain circumstances. 520 ILCS 5/3.22. Of the ten entities and individuals identified in Plaintiff's complaint, IDNR records show that seven out of ten had a "scientific and special purpose

permit" – commonly referred to by IDNR as a rehabilitator permit, in 2020 that allowed them to rehabilitate wildlife in 2020.[1] *See* Declaration of Sergeant Stuart Fraser at ¶ 3, attached hereto as Exhibit 2. This permit allows an individual or entity to keep a wild animal with the goal of releasing it back into the wild. 520 LICS 5/3.22. Thus, a rehabilitator's situation is distinctly different from Plaintiff, who, as stated, would like to have coyotes living on her residential property indefinitely. The three who do not have a current rehabilitator permit are not similarly situated to Plaintiff. IDNR records show that the Cosley Zoo and Big Run Wolf Ranch do not have current rehabilitator permits. However, these are large educational facilities that cannot be compared to Plaintiff keeping coyotes on her residential property.[2] Moreover, they could have other scientific or educational permits or hold permits under a different name.

Further, even if one of these entities does not have a valid permit to keep a coyote, Plaintiff does not plead that the IDNR knowingly allowed this entity to keep coyotes without proper authorization. The "[f]ailure to proceed against others who are comparably situated is not by itself a basis for finding a denial of equal protection." *Gottlieb v. Vill. of Irvington*, 69 F. Supp. 2d 553, 559 (S.D.N.Y. 1999) (allegations that village did not take action against the plaintiffs' neighbor's nonconforming driveway did not state an equal protection claim) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 684 (2d Cir. 1995)). Equal protection "does not require

---

[1] The individuals and entities with a rehabilitator permit are: Flint Creek Wildlife Rehabilitation, Dawn Keller, Forest Preserve District of DuPage County d/b/a Willowbrook Wildlife Center, Fox Valley Wildlife Center, Treehouse Wildlife Center, Hoo Haven Wildlife and Education Center, and Karen M. Herdklotz. *See* Fraser Declaration at ¶ 3.

[2] *See* https://cosleyzoo.org/ (last visited Oct. 26, 2020) and http://www.bigrunwolfranch.org/ (last visited Oct. 26, 2020). Further, the third individual Plaintiff alleges has kept a coyote without a hound running permit, John Basile, is the president of Big Run Wolf Ranch. *See* http://www.bigrunwolfranch.org/about_big_run.html (last visited Oct. 26, 2020). This Court may take judicial notice of this information and other external sources cited in this brief, as they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *see* Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts "whose accuracy cannot reasonably be questioned"); *see also* Fed. R. Evid. 902(6) (official documents and newspapers are self-authenticating); Fed. R. Evid. 101(b)(6) (rules on printed information apply to electronic sources of information).

that all evils of the same genus be eradicated or none at all." *Zahra*, 48 F.3d at 684 (quoting *LeClair v. Saunders*, 627 F.2d 606, 608 (2d Cir. 1980)). Thus, Plaintiff cannot show that these individuals and entities are similarly situated to Plaintiff.

Finally, Plaintiff cannot allege a viable claim that she is being treated differently than wildlife sanctuaries, rehabilitation centers, and zoos for no rational reason. Again, Plaintiff was, and wants to continue, keeping coyotes as pets on her residential property in a suburban neighborhood. This is distinctly different than running a wildlife sanctuary where animals are kept in a large area of land that is not in a residential neighborhood. As such, Plaintiff's "class of one" equal protection claim is not likely to succeed.

### C. The Wildlife Code is not preempted by federal law.

Plaintiff alleges that the Wildlife Code's requirement that she obtain a hound running area permit to keep coyotes is preempted by the Animal Welfare Act ("AWA"). ECF No. 6 at 7-8. However, the Seventh Circuit has specifically held that the AWA does not preempt state or local regulation of animal or public welfare. *See DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 722 (7th Cir. 1994). In *DeHart*, the Seventh Circuit recognized that preemption is not invoked lightly. *DeHart*, 39 F.3d at 22. As such, courts must "start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the *clear and manifest* purpose of Congress." *Id.*, *quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). When tasked with determining whether the AWA preempts state law, the Seventh Circuit found that "it is clear that the AWA does not evince an intent to preempt state or local regulation of animal or public welfare. Indeed, the AWA expressly contemplates state and local regulation of animals." *Id.*

Further, Plaintiff argues that preemption still applies because the AWA only allows states to impose restrictions that exceed AWA standards, and that hound running cannot be reconciled

with the AWA. ECF No. 6 at 8-9. However, the plain language of the AWA refutes that argument. The AWA states that "the term 'animal fighting venture' shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another animal." 7 U.S.C. § 2156(f)(1). For both of these reasons, Plaintiff's preemption claim cannot succeed.

> **D.** **Plaintiff has not stated a claim that the Wildlife Code infringes upon the Free Exercise clause of the First Amendment.**

Plaintiff has not stated a claim that the Wildlife Code infringes upon her right to practice her religion under the First Amendment. Free exercise claims are governed by the Supreme Court's decision in *Emp't Div. v. Smith*, 494 U.S. 872 (1990). In *Smith*, the Court held that "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Id.* at 879 (citations omitted). In other words, "a neutral law of general applicability is constitutional if it is supported by a rational basis." *Ill. Bible Colleges Assoc. v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017). This is true even where a law has "the incidental effect of burdening a religious practice." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007).

To determine whether a law is neutral, courts first "examine the object of the law." *Id.* "A law is not neutral if 'the object of the law is to infringe upon or restrict practices because of their religious motivation.'" *Id.* (quoting *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). Courts must also assess the "general applicability" of a law, which "forbids the government from imposing burdens only on conduct motivated by religious belief in a 'selective manner.'" *Id.*

Finally, the Seventh Circuit also requires courts to review the law's burden on religious institutions because "[a] regulation neutral on its face may, in its application, nonetheless offend the constitutional requirement for governmental neutrality if it unduly burdens the free exercise of religion." *Vision Church v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006) (internal quotation admitted); *see also Listecki v. Official Committee of Unsecured Creditors*, 780 F.3d 731, 744 (7th Cir. 2015).

In short, if a law is not neutral or generally applicable, or if the law unduly burdens the free exercise of religion, the law "must be justified by a compelling governmental interest and must be narrowly tailored to advance that interest." *Vision Church*, 468 F.3d at 996 (internal quotations omitted). Otherwise, a law is only subject to rational basis review.

Here, the Wildlife Code that Plaintiff challenges is a neutral law of general applicability that does not unduly burden the free exercise of religion. As such, the hound running area permit requirements of the Wildlife Code are only subject to a rational basis analysis. *Id.* at 1001, *citing Locke v. Davey*, 540 U.S. 712, 720 n. 3 (2004). First, the purpose of the Wildlife Code relates entirely to how wild animals in the state may be kept; this is a neutral purpose that was not motivated by religion or designed to infringe upon religious practices. *St. John's*, 502 F.3d at 631. The Wildlife Code is also of general applicability, as it applies to all individuals in the state. Finally, the Wildlife Code does not create an undue burden on the practice of religion.

Further, Plaintiff bases her entire free exercise argument on her assertion that hound running would violate her "religious, ethical, and moral beliefs," without specifying what religion hound running allegedly violates. Moreover, Plaintiff does not allege that she has any religious need to have a coyote live on her residential property. Therefore, there is no state requirement that Plaintiff engage in hound running; Plaintiff can decline to attempt to obtain a

11

properly issued hound running area permit and not have a coyote on her property. Therefore, Plaintiff's free exercise claim cannot succeed on its merits.

### E. Plaintiff cannot state a viable substantive or procedural due process claim.

To state a substantive or procedural due process claim, Plaintiff must identify a protected liberty or property interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972); *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008). Here, Plaintiff alleges that she has a property interest in Luna. ECF No. 6 at 12-13. At the hearings before this court on October 16, 2020 and October 19, 2020, Plaintiff also alleged that she has a property interest in the hound running area permit.

First, Plaintiff does not have a property interest in Luna. It is undisputed that Plaintiff never had Luna in her possession when she had both a fur-bearing mammal breeder permit and a hound running area permit. In fact, when Luna was removed from Plaintiff's property, she did not even have the fur-bearing mammal breeder permit, as she had allowed that permit to expire. ECF 6 at 3. As such, at all times that Luna was in Plaintiff's possession she was contraband under the Wildlife Code. 50 ILCS 5/1.2(c). As recognized by the Illinois Appellate Court when it denied Plaintiff's state-law request for injunctive relief, under Illinois law an individual cannot have a protected property interest in contraband. *Tranchita v. Dep't of Natural Res.*, 2020 WL 2097351 at 3, 5; *see also Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46, 200 N.E.2d 833, 835 (1964) (stating that nobody can assert legal ownership or a right to possess contraband). Therefore, Plaintiff never had a property interest in Luna and cannot assert that her erroneously issued hound running area permit now creates a property interest in a coyote that she has never legally possessed.

Plaintiff also alleges that because she had the coyotes without a hound running area permit for years, she has a property interest in Luna because of a "policy or custom". ECF No. 6

at 12-13. This is inaccurate. Fur-bearing mammal breeder permits apply to 13 different species. 520 ILCS 5/1.2g. To obtain the fur-bearing mammal breeder permit, an individual is not required to specify which of these 13 species the applicant will keep. Snow Declaration at ¶ 10. As such, IDNR was not aware that Plaintiff was raising coyotes and therefore also needed a hound running area permit. To the extent that Plaintiff relies on the alleged conversation from an unknown IDNR official in 2011 to establish that IDNR was allowing her to have coyotes without the hound running area permit (ECF No. 6 at 5), the argument still fails. *Daniels v. Williams*, 474 U.S. 327, 330 (1986)  ("negligent acts by state officials, though causing loss of property, are not actionable under the Due Process Clause"); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he lack of due care of an official causing unintended injury to life, liberty or property" does not amount to a due process violation).  Moreover, Plaintiff alleges that requiring the hound running area permit is a new policy. ECF No. 6 at 13. This is not true. This requirement has been in effect since 1978. *See* 520 ILCS 5/3.25. Plaintiff simply did not adhere to the statutory requirement. The fact that IDNR was not aware of the violation for years does not mean that Plaintiff legally possessed coyotes or had a property interest in the coyotes.

Therefore, the only potential property interest that Plaintiff has relates to the mistakenly issued 2020-2021 hound running area permit—a permit that Plaintiff obtained through a technological glitch with the IDNR online payment portal and without providing the appropriate paperwork to IDNR. It is unclear whether Plaintiff can have a property interest in a permit for which she knew she did not satisfy the requirements, but even if she has such a property interest, as discussed further below, IDNR has not violated her procedural or substantive due process rights.

13

### 1. The permit revocation process that Plaintiff will be afforded satisfies the procedural due process requirements.

At its core, procedural due process requires notice and the opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 332-3 (1976). It is well established that the contours of what constitutes adequate due process are "flexible and calls for such procedural protections as the particular situation demands." *Morissey v. Brewer*, 408 U.S. 471, 481 (1972). To determine the amount of process required, the courts consider: (1) "the private interest that will be affected by the official action," (2) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail," and (3) "the risk that the plaintiff will suffer an erroneous deprivation through the procedure used and the probable value if any of additional procedural safeguards." *Mathews*, 424 U.S. at 335.

Here, the amount of procedural due process that Plaintiff will receive includes a written notice that the hound running area will be revoked and the opportunity to appeal that decision to an administrative law judge. Snow Declaration at ¶ 9. This fully satisfies the *Mathews* requirements. The first element of the *Mathews* test looks to the private interest at issue. *Mathews*, 424 U.S. at 335. Here, the interest at issue is Plaintiff's ability to have a hound running area permit. Plaintiff has no desire to run hounds (*see* ECF No. 6), and she only wants the permit to try to regain possession of an animal that she does not have a property interest in. This interest is significantly outweighed by the second *Mathews* factor – the government's interest. *Id.* IDNR has significant interest in enforcing its laws and regulating where and how wild, and potentially dangerous, animals can be kept. Finally, the third factor, which looks to the possibility of erroneous deprivation, *id.*, is also satisfied, as there is no question that Plaintiff does not meet the requirements to hold a hound running area permit. This makes the risk of an erroneous

deprivation non-existent. Therefore, Plaintiff's procedural due process claim is unlikely to succeed, as she will receive adequate procedural due process if her permit is revoked.

At the hearing on October 19, 2020, Plaintiff argued that IDNR may be estopped from revoking the hound running area permit because Plaintiff has had it since April 2020. In reliance, Plaintiff referenced *Williams v. Office of Chief Judge of Cook County Illinois*, 839 F.3d 617 (7th Cir. 2016). *Williams* is inapposite, as it addressed whether the Office of the Chief Judge could be estopped from renouncing a promise that one of its agents allegedly made about an employee's return-to-work date, while this case would involve estopping the state from enforcing its laws. Equitable estoppel is "general[ly] not available to bar the government from enforcing the laws." *Gutierrez v. Gonzalez*, 458 F.3d 688, 691 (7th Cir. 2006). In fact, "[t]he Supreme Court has *never* affirmed a finding of estoppel against the government." *Matamoros v. Grams*, 706 F.3d 783, 793 (7th Cir. 2013). Seventh Circuit precedent states that affirmative misconduct is a requirement for an estoppel claim against the State. *Id.* Here, Plaintiff cannot show that IDNR would be engaging in affirmative misconduct if they revoke the hound running area permit—a permit that IDNR did not know she had until this motion was filed and that, by her own admission, she is not qualified to properly possess. *See* 520 ILCS 5/3.33 (stating that IDNR may revoke a hound running area permit if they learn of any non-compliance with the permit requirements). Moreover, Plaintiff does not allege that she has acted in reliance based on the inadvertently issued permit, so as to justify any sort of estoppel against IDNR. *Williams*, 839 F.3d at 625, citing *Chicago v. Miller*, 188 N.E.2d 694, 696 (1963) (estoppel is generally disfavored, but may be available against a municipality "where [the plaintiff's] action was induced by the conduct of a municipal official, and where, in the absence of such relief, he would

suffer a substantial loss"). As such, there is no potential estoppel claim against IDNR that would prohibit it from revoking the license at this time.

2.      **Revoking a permit that was issued in error is not arbitrary or irrational and, as such, there is no substantive due process violation.**

The Seventh Circuit recognizes that "the scope of substantive due process is very limited." *Campos v. Cook County*, 932 F.3d 972, 975 (7th Cir. 2019). To assert a substantive due process claim, "a plaintiff must allege that the government violated a fundamental right or liberty" . . . "[a]nd that violation must have been arbitrary and irrational." *Id.* at 975 (internal citations omitted). "Substantive due process protects against only the most egregious and outrageous government action." *Id.* Plaintiff cannot satisfy either requirement to state a substantive due process claim.

First, Plaintiff does not allege that the revocation of a hound running area permit violates a recognized fundamental right. Courts have recognized only a handful of fundamental rights with a substantive component under the due process clause, specifically the right to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion, and Plaintiff does not claim that any of these rights are at issue here. *See Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997). "The Supreme Court has repeatedly cautioned against expanding the contours of substantive due process." *Catinella v. Cty. of Cook*, 881 F.3d 514, 518 (7th Cir. 2018). This is "because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005).

Plaintiff does not allege that any fundamental right is at issue. Instead, Plaintiff solely focuses on her allegation that requiring Plaintiff to have a hound running area permit is arbitrary and irrational. However, IDNR enforcing its statutes and placing restrictions on the possession of

16

wild animals in Illinois is rationally related to a legitimate governmental interest. *Frey Corp. v. City of Peoria Ill.*, 735 F.3d 505, 508 (7th Cir. 2013) (recognizing that regulations that relate to public health, safety, or welfare relate to a legitimate governmental interest). The regulation of the possession of wild animals is not arbitrary or irrational. Such animals may pose a danger to children and domestic animals such as cats and small dogs.[3] Moreover, as the Supreme Court has held, the "[p]rotection of the wild life of the State is peculiarly within the police power, and the State has great latitude in determining what means are appropriate for its protection." *Baldwin v. Fish & Game Comm'n of Montana*, 436 U.S. 371, 391 (1978), *quoting Lacoste v. Dept. of Conservation,* 263 U.S. 545, 552 (1924). Plaintiff's disagreement with the application of the Wildlife Code in her particular case does not make the Wildlife Code irrational. As the Seventh Circuit has explained:

> Rationality does not require that a rule be the least restrictive means of achieving a permissible end. The general wisdom of Indiana's approach is not a matter for this Court's scrutiny. . . . Nor is it relevant that some unfairness results from the application of the rule. . . . Under rational basis review, some slippage is permissible.

*Scariano v. Justices of Supreme Court of State of Ind.*, 38 F.3d 920, 925 (7th Cir. 1994) (citations omitted). As such, Plaintiff cannot state a substantive due process claim.

---

[3] *See, e.g.*, Alan Yuhas, "Two coyote attacks on young children prompt California to warn residents," *The Guardian* (Jul. 30, 2015), *available at* https://www.theguardian.com/us-news/2015/jul/10/coyote-attacks-children-california (last visited Oct. 23, 2020) (detailing four separate attacks on young children by coyotes in California in May and July 2015); Katie Mettler, "A coyote attacked a toddler. His father strangled it," *Washington Post* (Jan. 21, 2020), *available at* https://www.washingtonpost.com/science/2020/01/21/coyote-attack-killed-kensington/ (last visited Oct. 23, 2020) (detailing three attacks by an aggressive coyote in southeastern New Hampshire on one day, including an attack on a caller in a vehicle, an attack on a 62-year-old woman and her dogs, and an attack on a two-year-old boy in the presence of the child's parents and siblings).

## II.  PLAINTIFF HAS NOT SHOWN THAT SHE WILL BE SUBJECT TO IRREPARABLE HARM WITHOUT JUDICIAL INTERVENTION.

Plaintiff has also failed to establish that she will suffer irreparable harm if the Court denies her motion. The "possibility" of irreparable harm is not enough to warrant preliminary relief a plaintiff must "demonstrate that irreparable harm is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). Plaintiff cannot satisfy this requirement.

Plaintiff alleges that she will suffer irreparable harm if Luna is not returned to her immediately because Luna could die soon. ECF No. 6 at 14. However, any harm to Plaintiff at this time is speculative and Plaintiff cannot show when that any alleged irreparable harm would occur. *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 705 (7th Cir. 2005) (stating that litigants are not entitled to a preliminary injunction for every conceivable injury). As such, while the situation may not be ideal, the harm that Plaintiff alleges she will suffer if her request for injunctive relief is not granted is speculative. Moreover, should this Court consider whether Plaintiff will suffer irreparable harm if the erroneously issued hound running area permit is revoked, Plaintiff still has not shown that revocation would result in irreparable harm. There is no doubt that Plaintiff does not currently run hounds or have any desire to run hounds. *See* ECF No. 6. Outside of her desire to use the erroneously issued permit to obtain possession of Luna, Plaintiff has no interest in holding a hound running area permit and, as stated, Luna not being returned to Plaintiff does not amount to irreparable harm.

## III.  THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF THE STATE.

Under the "balance of harms" portion of the analysis, plaintiffs must establish that "the harm they would suffer without the injunction is greater than the harm that preliminary relief would inflict on the defendants." *Mich. v. U.S. Army Corps of Eng'g*, 667 F.3d 765, 769 (7th Cir.

18

2011). As Plaintiff's claims are unlikely to succeed on their merits, Plaintiff "must compensate for the lesser likelihood of prevailing by showing the balance of harms tips *decidedly* in favor of the movant." *Boucher*, 134 F.3d at 826 n. 5 (emphasis in original). The court also should consider whether a preliminary injunction would cause harm to the public interest. *Platinum Home Mort. Corp. v. Platinum Fin. Group, Inc*., 149 F.3d 722, 726 (7th Cir. 1998).

When this Court balances the hardships where "the Government is the opposing party, the final two factors in the temporary restraining order analysis—the balance of the equities and the public interest—merge. *Planned Parenthood of New York City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 343 (S.D.N.Y. 2018); *Trump v. Int'l Refugee Assistance*, 138 U.S. 353 (2017) ("As the district court did, we consider the balance of the equities and the public interest factors together."); *see also Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) ("The government's interest *is* the public interest.") (emphasis in original).

Here, Plaintiff's interest only relates to her individual desire to have Luna. In contrast, IDNR's interest is in enforcing state laws. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Proft v. Madigan*, 340 F. Supp. 3d 683, 695 (N.D. Ill. 2018), *aff'd sub nom. Proft v. Raoul*, 944 F.3d 686 (7th Cir. 2019), *quoting Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers). Moreover, as discussed above, IDNR has strong interests in protecting the public and regulating wildlife in Illinois. Not only would granting this motion prevent IDNR from fulfilling its obligations as it relates to enforcing the Wildlife Code, granting this motion would imply that the requirements of the Wildlife Code are optional and can be overruled if an individual is willing to file multiple lawsuits, which would undermine IDNR's

ability to enforce the Wildlife Code in the future. As such, the public interest factor weighs strongly in favor of IDNR and Plaintiff's motion should be denied.

## **CONCLUSION**

Plaintiff is using this motion to attempt to relitigate the request for a temporary restraining order/preliminary injunction that was denied by the Illinois Appellate Court and, as such, this Court should decline to hear this matter based on the *Rooker-Feldman* doctrine. Additionally, Plaintiff cannot satisfy the high standard to warrant a mandatory injunction as she is unlikely to succeed on the merits of her claims, she will not suffer irreparable harm if this motion is denied, and public interest favors denying the motion.

WHEREFORE, Defendants respectfully request that this Court deny Plaintiff's motion for a temporary restraining order and preliminary injunction.

October 26, 2020                                    Respectfully submitted,

                                                   KWAME RAOUL
                                                   Attorney General of Illinois

                                                    */s/ Mary A. Johnston*
                                                   Mary A. Johnston
                                                   Office of the Illinois Attorney General
                                                   100 West Randolph Street
                                                   Chicago, Illinois 60601
                                                   (312) 814-3739

                                                   *Counsel for IDNR Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 26, 2020, I caused a copy of the foregoing *Defendants Callahan, Fischer, and Mooi's Memorandum in Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* to be filed electronically on CM/ECF, which will cause a notice of filing to be sent to all counsel of record who have entered appearances.

*/s/ Mary A. Johnston*