**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TOMI TRANCHITA, | CASE NO. 1:20-cv-5956 |
| Plaintiff, | JUDGE SARA L. ELLIS |
| v. | MAGISTRATE: JEFFREY COLE |
| KWAME RAOUL, et al. | **REPLY TO DEFENDANTS'** |
| Defendants. | **OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

**I.    IDNR cannot revoke Tranchita's Hound Running Area permit without a pre deprivation hearing**

> **A.  The process Defendants claim they can invoke to revoke Tranchita's permit is nonexistent**

Seven months after IDNR issued Tranchita a 2020-2021 Hound Running Area permit, IDNR seeks to revoke it.  Defendants claim they can revoke this permit because she does not qualify for it and because it was issued in error.[1]  IDNR falsely asserts Tranchita "will receive adequate procedural due process if her permit is revoked."[2]  Defendants assert that they can revoke Tranchita's 2020-2021 Hound Running Area permit, which she has held since April 30, 2020, and then she can maintain an appeal through the administrative process, and this revocation and administrative process "fully satisfies the *Mathews* requirements."[3]

---

[1] Doc. #13, p. 14-16.
[2] Doc. #13, p. 15.
[3] Doc. #13, p. 14 ("Here, the amount of procedural due process that Plaintiff will receive includes a written notice that the hound running area will be revoked and the opportunity to appeal that decision to an administrative law judge.").

Defendants are not being truthful with this Court. The post-deprivation administrative appeal process that Defendants are attempting to convince this Court they can invoke, is nonexistent. According to two IDNR publications specifically pertaining to permit revocations, revocation can only occur if and only if there is a certain accumulation of points prior to the revocation.[4] According to the Administrative Code,

> A Hound Running Area Permit holder who accumulates 13 or more points based on violation of the Wildlife Code as set out in 17 Ill. Adm. Code 2530 (Revocation Procedures for Conservation Offenses) and has his or her licenses, permits and stamps issued under the Wildlife Code revoked and privileges suspended, shall be allowed 30 days from the date of revocation/suspension to dispose of all animals held under the Hound Running Area Permit and the Fur-bearing Mammal Breeder's Permit or Commercial Game Breeder's Permit.

17 Ill. Adm. Code §970.90. There is no provision in the law, nor has IDNR identified any, which authorizes IDNR to revoke a permit other than based upon the accumulation of point system. Tranchita has neither accumulated any points, nor has IDNR assigned her any points.

The process Defendants are trying to invoke to revoke Tranchita's Hound Running Area permit does not satisfy due process because the method by which they intend to revoke does not exist in state law. This is not a situation where state law violates due process, but rather is a situation where there is no process for revocation. Defendants cannot make up a procedure and claim it` satisfies due process, when no such procedure exists. The post deprivation remedy suggested by Defendants is "meaningless" and "nonexistent" and will not provide meaningful redress. See *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990) (state remedy cannot be "meaningless or nonexistent"). Defendants are attempting to create a new administrative rule upon which they can justify the revocation of Tranchita's Hound Running Area permit. There is

---

[4] TRO Reply Exhibit A and B – IDNR Permit Revocation Publications.

2

no such rule, and according to Illinois Administrative Code, Section 260.350(a), "Agency rules that are not adopted in accordance with the procedures set forth in the Act are invalid and unenforceable." Defendants are creating an ad hoc procedure, contrary to the Administrative Code.

There is a concrete risk that revocation of Tranchita's 2020-2021 Hound Running Area permit is erroneous due to nonexistence of an administrative process. Therefore, a hearing prior to revocation is necessary. "W]hen the risk of revoking a license erroneously is very low and the government's interest in revocation is high—and it typically is considered high when it acts to protect the public—a hearing prior to revocation may not be necessary." *Bhalerao v. Ill. Dep't of Fin. & Prof'l Regulations*, 834 F. Supp. 2d 775, 786 (N.D. Ill. 2011) (internal citation omitted). The risk of erroneously revoking Tranchita's Hound Running Area permit is not low, but rather very high. There is no possibility here of the public needing protection, whereas the revocation of the Hound Running Area permit harms Tranchita and Luna.

If IDNR revokes Tranchita's current Hound Running Area permit this will result in irreparable harm to Tranchita because IDNR has no statutory or Administrative Code authority to revoke the Hound Running Area permit. The reason IDNR does not want to provide Tranchita with a pre deprivation hearing is because there is no process which exists to revoke her permit. Defendants are making up the process as they go along, and this is why none of the constitutional procedural safeguards exist, because no procedure exists. To revoke under a system which requires a certain number of points to accumulate prior to revocation, and Tranchita has no points accumulated, yet Defendants are relying upon that revocation appeal process, is a red herring. Moreover, Defendants have not identified any emergency which would warrant the dispensation of the pre deprivation hearing and have not acclaimed there is a matter

of health and safety.  See *Miles v. Vill. of Dolton*, No. 15 CV 5017, *17 (N.D. Ill. Mar. 23, 2016)

(quoting *Contreras v. City of Chicago*, 920 F. Supp. 1370, 1393 (N.D. Ill. Mar. 29, 1996)

("'[W]here matters of health and safety are involved, the State may act first and ask questions

later without offending the Due Process Clause.'").

The only possible  emergency does not put IDNR or the State of Illinois at risk.  Rather,

with winter approaching and Luna continuing to suffer in her present environment, her life is at

risk.  Why IDNR wishes to act contrary to its own Mission Statement and instead exert all its

efforts to keep Luna and Tranchita apart, remains a mystery.

### B.  Tranchita has a protected interest in the Hound Running Area Permit

Tranchita has a protected interest in the Hound Running Area permit, because she holds

this permit, she has held this permit for seven months, and IDNR issued her that permit.  Perhaps

if this had happened only once, there would be reason to excuse IDNR's claimed error.  But this

has happened twice.  Tranchita also has a protected interest in not having the permit revoked

unlawfully.

## II.    As long as Tranchita holds a current Fur-bearing Mammal Breeder Permit, Luna will not be considered contraband

If Tranchita is allowed to possess Luna in Illinois, this Court can be confident that Luna

is not considered contraband under Illinois law, despite Defendants' assertion otherwise.

Defendants asserts that coyotes possessed without both a Hound Running Area permit and a Fur-

bearing Mammal Breeder permit, are contraband.  This position is directly contrary to Illinois

law.  *Tranchita v. Department of Natural Resources*, established that "coyotes possessed without

such a [Fur-bearing Mammal Breeder permit] are contraband."  2020 IL App (1st) 191251, ¶ 24

(May 1, 2020).

4

In *Tranchita v. Department of Natural Resources*, the state appeal court held that because Tranchita did not hold the Fur-bearing Mammal Breeder permit her coyotes were contraband,

> Plaintiff acknowledges that her fur-bearing mammal breeder permit lapsed in 2016 for nonpayment of the $25 fee. She gives no reason why she stopped paying the fee in 2016 when she had paid for the permit the previous five years. From the moment her permit lapsed, plaintiff's possession of the coyotes violated section 3.25 of the Wildlife Code. Wildlife possessed "contrary to any of the provisions [hereof]" is contraband. *Id*. § 1.2c. No person or party can assert legal ownership or right to possession of property that is contraband. *Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46 (1964).

T*ranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, at ¶17. The contrapositive of the above holding set forth in *Tranchita v. IDNR*, is that those who possess coyotes with a Fur-bearing Mammal Breeder permit do not possess contraband. Therefore, as long as Tranchita holds a 2020-2021 Fur-bearing Mammal Breeder permit Luna will not be contraband if she is reunited with Tranchita in Illinois. Tranchita currently holds a 2020-2021 Fur-bearing Mammal Breeder permit.

### III. Defendants are Collaterally and Judicially Estopped from arguing there are other permits which authorize a person to possess coyotes

In Defendants' Opposition, they declare that "[p]ursuant to the Wildlife Code, to legally possess a coyote in the state of Illinois, an individual must have a fur-bearing mammal breeder permit and a hound running area permit. 520 ILCS 5/3.25."[5] During the state civil case, IDNR represented that "[t]he only way to lawfully keep coyotes in Illinois is to have both a fur-bearing mammal breeder permit and a hound running area permit."[6]

---

[5] Doc. #13, p.1.
[6] TRO Ex. Q, at 8; see also TRO Ex. P, at 4 ("The plain language of the Wildlife Code provides, the fur-bearing mammal permit does not allow for the possession of coyotes. The only exception to this bar is if an individual possesses a hound-area running permit."); see also TRO Ex. N, p. 8-9.

Defendants have now suddenly announced that there are in fact other permits which authorize a person to possess a coyote,

> Plaintiff does not understand that there are other ways to legally keep coyotes other than possessing a fur bearing mammal breeder permit and hound running area permit—zoos, rehabilitation facilities, and scientific facilities may also legally keep coyotes under certain circumstances.[7]

This statement by IDNR directly flies in the face of the Illinois appellate decision which stated in unambiguous and glaringly clear language, "under Illinois law, a person must have a fur-bearing mammal breeder permit before possessing or raising a coyote." *Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 16 (May 1, 2020).

During the state criminal and civil cases, not once did IDNR ever represent, or even suggest there are other permits available to possess coyotes. As set forth in both the Complaint and the TRO motion, no less than seven statements were made by the State of Illinois which clearly evidences IDNR position. IDNR's position at the time of the state litigation remained consistent. According to IDNR at that time, "[t]he plain language of the Wildlife Code provides, the fur-bearing mammal permit does not allow for the possession of coyotes. The only exception to this bar is if an individual possesses a hound-area running permit."[8] According to the Illinois Attorney General, "The only way to lawfully keep coyotes in Illinois is to have both a fur-bearing mammal breeder permit and a hound running area permit."[9] Defendants are collaterally and judicially estopped from creating exceptions to what it declares is the "plain language of the Wildlife Code" which according to Defendants requires a person to hold both a Fur-bearing Mammal Breeder permit and a Hound Running Area permit.

---

[7] Doc. #13, p. 7.
[8] TRO Ex. P, at 4
[9] TRO Ex. Q, p. 12.

"Collateral estoppel is an equitable doctrine that precludes a plaintiff from re-litigating issues that have previously been resolved by a court of competent jurisdiction." *PolyOne Corp. v. Yun Martin Lu*, No. 14-CV-10369, *2-3 (N.D. Ill. July 10, 2019) (citing *Havoco of Am.*, *Ltd. v. Freeman*, *Atkins & Coleman*, *Ltd.*, 58 F.3d 303, 307-08 (7th Cir. 1995)). The state appeal court has resolved that all persons who possess coyotes in Illinois, must hold a fur-Bearing Mammal Breeder permit. IDNR was the defendant in that litigation and was represented by the Illinois Attorney General. Defendants cannot now assert that a "rehabilitator permit" also permits a person to possess coyotes.

Defendants are also judicially estopped from adopting this inconsistent position that there are other permits which allow a person to possess a coyote in Illinois. "The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions.". *Spaine v. Cmty. Contacts*, *Inc.*, 756 F.3d 542, 547 (7th Cir. 2014).

## IV.    Equal Protection – Similarly Situated

### A.  "Rehabilitator Permit"

Defendants do not deny that there are others in the State of Illinois who own or possess coyotes without holding the required Fur-bearing Mammal Breeder permit and the Hound Running Area permit. However, now there are exceptions to those requirements. According to Defendants, seven of the ten entities and individuals identified in Plaintiff's complaint as being similarly situated, possess a 2020 "rehabilitator permit" which, according to Defendants allows them to "rehabilitate wildlife in 2020."[10] Defendants' Exhibit 2 identifies "Flint Creek Wildlife

---

[10] Doc. #13, p. 7-8.

Rehabilitation, Dawn Keller, Forest Preserve District of DuPage County d/b/a Willowbrook Wildlife Center, Fox Valley Wildlife Center, Treehouse Wildlife Center, Hoo Haven Wildlife and Education Center, and Karen M. Herdklotz" as holding "a rehabilitator permit as of April 2020 or June 2020."[11] The purpose of a rehabilitator permit, according to Defendants, is to "allow[s] an individual or entity to keep a wild animal with the goal of releasing it back into the wild."[12]

The facts bely this new theory and show that the persons and entities which Defendants claim hold rehabilitator permits have not released coyotes into the wild, and instead maintain those coyotes as permanent residents. Treehouse Wildlife Center, which IDNR claims holds a "rehabilitator permit" has possessed two coyotes, one named Apache which it obtained in 2015, and one named Zuni which it obtained in 2011.[13] According to their website they identify these two coyotes (Apache and Zuni) as "resident" animals.[14] According to a news article, "Others, like Apache's penmate Zuni, were kept as pets only to be surrendered by their owners, leaving them unable to be released back into the wild."[15]

A news article dated May 27, 2018 shows that Dawn Keller and Flint Creek Wildlife Rehabilitation Center, possessed a coyote since May of the prior year. According to the article, "[a] fisherman found [Peace the coyote] in a burlap bag last May [2017] in a Cook County Forest Preserve pond in Barrington Hills. Five other pups drowned. All had been beaten."[16] The article

---

[11] Def's Exhibit 2 (Doc. #13-2).
[12] Doc. #13, p. 8.
[13] TRO Reply Exhibits C and D – Zuni and Apache are permanent residents.
[14] TRO Reply Exhibits C and D.
[15] TRO Reply Exhibit E– Article on Treehouse.
[16] TRO Reply Exhibit F – Article on Flint Creek.

also discusses "[t]he center's longtime coyote, Beautiful * * * ."[17]  Similar to many of the

similarly situated individuals and entities, Tranchita also rescued her coyotes,

> [F]or 13 years, [Tranchita] cared for four abused and abandoned
> coyotes. The senior coyotes, Sandy and Luna, came to her through
> her work in animal rescue. The other two, Bella and Peyton (*sic*),
> came to plaintiff's care from abusive situations.

*Tranchita v. Department of Natural Resources*, 2020 Il. App (1st) 191251, at ¶ 5.

### A.  Indefinitely

IDNR asserts that because Tranchita has no intention of releasing them into the wild and

because her coyotes live on her property "indefinitely" she is not similarly situated to the others.

IDNR has provided no evidence that those other similarly situated persons do not keep their

coyotes "indefinitely."

Cosley Zoo is one of the entities Tranchita alleges is similarly situated because it also

possesses coyotes.  It is an entity which Defendants acknowledge does not hold the so called

"rehabilitator permit."[18]  According to Cosley Zoo's Facebook page, "Wiley the coyote has been

living at Cosley Zoo since 2014 * * * [and he] found his forever home at Cosley Zoo where he

helps to connect people with animals and nature."[19]  John Basile and Big Run Wolf Ranch also

have resident coyotes.  According to Big Run Wolf Ranch's website, it has had possession of a

coyotes named Montana since July of 2019 and Miwok, a coyote since 2011.[20]

### B.  Residential Property

---

[17] Id.
[18] Doc. #13, p. 8 ("IDNR records show that the Cosley Zoo and Big Run Wolf Ranch do not
have current rehabilitator permits.").
[19] TRO Reply Exhibit G – Cosley Zoo FB post on Wiley.
[20] TRO Reply Exhibit H – Big Run website.

Defendants attempt to differentiate Tranchita from the others she alleges are similarly situated by asserting because Tranchita's property is "residential property." According to county government property records, John Basile and Big Run Wolf Ranch operate on "residential property."[21] Treehouse Wildlife Center also conducts its operation on "residential property" according to county government records.[22]

Additionally, at no time since Tranchita first possessed coyotes in 2006 has Tinley Park, Illinois ever had an issue with her possessing coyotes. Rubi Wilson, Tinley Park's Animal Control Officer was present in 2011 when IDNR inspected her property, and when IDNR Conservation Officer Ron O'Neal informed Tranchita that she was required to hold a Fur-bearing Mammal Breeder permit.[23] Cook County Animal Control Officer Frank Pierson was also present at the 2011 inspection.[24] None of those local officials had any issues with Tranchita's possession of coyotes. Moreover, neither the Fur-bearing Mammal Breeder permit nor the Hound Running Area permit, nor Tranchita's USDA Class C Exhibitor license, bar possessing coyotes in a "residential property in a suburban neighborhood."

### C. Luna is not a "pet"

Defendants attempts to differentiate Tranchita and others she claims are similarly situated, because Luna is "a pet."[25] Firstly, Luna is a "domesticated wild animal" according to the Domesticated Wild Animals Act. See 510 ILCS 60/1 (West 2016). *Tranchita v. Department of Natural Resources* identified Luna as a domesticated wild animal,

---

[21] TRO Reply Ex I – John Basile County Property Records.
[22] TRO Reply Ex J– Treehouse County Property Records.
[23] Doc. #1, ¶14.
[24] Doc. #1, ¶14.
[25] Doc. #13, p. 7.

> [A]ll birds and animals ferae naturae or naturally wild, including fur bearing animals not native to this State, when raised or in domestication, or kept in enclosures and reduced to possession, are hereby declared to be objects of ownership and absolute title, the same as cattle and other property, and shall receive the same protection of law, and in the same way and to the same extent shall be the subject of trespass or theft, as other personal property.

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 15 (May 1, 2020)

(quoting 510 ILCS 60/1 (West 2016)).

Additionally, Tranchita has never considered her coyotes to be pets. A large part of her educational mission has always been to inform the public that coyotes are NOT pets. In 2018 Tranchita published a YouTube video, which has received over a thousand views, and is titled "Coyotes are not pets. Please adopt a dog instead."[26] In another video that Tranchita published in 2016, which has over 148,000 views, she emphasizes that coyotes are not pets.[27]

## V. Equal Protection – IDNR Claims to Not Know Others Possess Coyotes

IDNR asserts that Tranchita cannot succeed on her equal protection claim because IDNR did not know that these others possessed coyotes.[28] In the state litigation, Tranchita informed IDNR that those persons possessed coyotes, and IDNR's response was "Tranchita appears to have discovered that unaffiliated third parties that possess coyotes also lack proper permits to do so, which does not excuse her violation and is at most helpful to the Department in its enforcement of the Wildlife Code against others."[29]

---

[26] https://youtu.be/a5qhM_JFSAk; see also TRO Reply Tranchita Declaration.
[27] https://youtu.be/gCpdMcJdi7U; see also TRO Reply Tranchita Declaration.
[28] Doc. #13, p. 8 ("Plaintiff does not plead that the IDNR knowingly allowed this entity to keep coyotes without proper authorization.").
[29] TRO Ex. X, p. 4.

Moreover, IDNR gave Tranchita's four coyotes to Flint Creek Wildlife Rehabilitation after the seizure. *Tranchita v. Department of Natural Resources*, 2020 Il. App (1st) 191251, at ¶8. That is where three of them died. *Id.* IDNR's own statements in state court establish that "Officer Mooi removed the four coyotes from [Tranchita's] property and transferred them to the custody of Flint Creek Wildlife Rehabilitation, a private care facility, for observation and treatment."[30] So IDNR, at a minimum knows that Flint Creek and its operator Dawn Keller, possessed coyotes. After the other coyotes died, Luna was transferred to Forest Preserve District of DuPage County, dba Willowbrook Wildlife Center, so Defendants knew they possessed a coyote.[31]

## VI. Rooker-Feldman Doctrine

Defendants assert Tranchita is not likely to succeed on the merits because, *inter alia*, her claims are barred by the *Rooker-Feldman* doctrine. According to the Defendants, "Plaintiff is, essentially, asking this Court to overrule the Illinois appellate court's decision on her state court motion for a temporary restraining order/preliminary injunction."[32] The very first sentence of Defendants' Opposition states, "Plaintiff filed her Complaint on October 7, 2020 alleging that her constitutional rights were violated by Defendants due to the seizure of her coyotes."

Again, Defendants are not being honest with this Court. None of Plaintiff's causes of action challenge the 2019 seizure of Tranchita's coyotes. Moreover, nowhere in either Tranchita's Complaint or her Motion for injunctive relief does she ask the Federal Court to overrule the state appeal court decision. In fact, Tranchita agrees with the state appeal court's

---

[30] TRO Ex. N, p. 3.
[31] Doc. #1, ¶ 99.
[32] Doc. #13, p. 5.

12

holding that "under Illinois law, a person must have a fur-bearing mammal breeder permit before possessing or raising a coyote." *Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, ¶ 16 (May 1, 2020).

## VII.    Preemption

Defendants claim the Wildlife Code is not preempted by the federal Animal Welfare Act because 7 U.S.C. § 2156(f)(1) states, "the term "animal fighting venture" shall not be deemed to include any activity the primary purpose of which involves the use of one or more animals in hunting another[.]"

According to the Wildlife Code, 520 ILCS 5/1.2y, "'Hound running'" means pursuing any fox, coyote, raccoon, or rabbit with a hound." The Hound Running Area permit does not require a possessor of coyotes to hold a hunting permit, and IDNR has never represented that a hunting permit is also required to possess coyotes. Moreover, the graphic pictures and videos set forth in Tranchita's Motion for injunctive relief bely that Hound Running is hunting, as opposed to an animal fighting venture, and animal welfare organizations object to hound running because it is essentially like dog fighting.[33]

## VIII.   Property Interest

---

[33] "Indiana Coyote Penning—An Inside Look at Animal Abuse and Cruelty – AWI Publication, available at
http://www.projectcoyote.org/documents/IN_Penning_Report_PC_ALDF_AWI_Final_low_res.
pdf, page 2; *see also* Animal Welfare Institute, Trapping and Penning, available at
https://awionline.org/content/trapping-and-penning; The Animal Welfare Institute has produced
a video showing the brutal sport of coyote penning, which is available at
https://youtu.be/3KqrXM99dJg; *see also* Inside the controversial culture of using dogs to hunt
coyotes, Washington Post, December 17, 2015, available at
https://www.google.com/url?q=https%3A%2F%2Fwww.washingtonpost.com%2Fnews%2Finsi
ght%2Fwp%2F2015%2F12%2F17%2Fthe-beauty-and-controversy-of-hunting-
coyoteswithhounds%2F%3FoutputType%3Damp&sa=D&sntz=1&usg=AFQjCNH6LaUsWx95u
YjPw3YHGdPWC8m3IQ.

Defendants asserts "Plaintiff never had a property interest in Luna and cannot assert that her erroneously issued hound running area permit now creates a property interest in a coyote that she has never legally possessed."[34] Defendants argue Tranchita "does not have a property interest in Luna" because "she never had Luna in her possession when she had both a fur-bearing mammal breeder permit and a hound running area permit."[35] These statements are in direct conflict with *Tranchita v. IDNR*'s holding, which explained that a property interest in a coyote is created when a fur-bearing mammal breeder permit is obtained,

> Before the trial court was the fact that plaintiff did not have a valid fur-bearing mammal breeder permit at the time the IDNR seized her coyotes. Pursuant to the Wildlife Code, coyotes possessed without such a permit are contraband. Without a legitimate claim of entitlement to the property, plaintiff had no right to a property interest protected by due process when her coyotes were seized. [ ] Therefore, the trial court properly denied her motion for a preliminary injunction. [ ].

*Tranchita v. Department of Natural Resources*, 2020 IL App (1st) 191251, at ¶ 24 (internal citations omitted).

Additionally, a policy or custom can form the basis of a property interest. See *Davis v. City of Chicago*, 841 F.2d 186, 188 (7th Cir. 1988). IDNR has issued Tranchita seven annual $25.00 Fur-bearing Mammal Breeder permits since 2011.[36] Moreover, the Dangerous Animal Act gives Tranchita a "right of property" because Tranchita holds a 2020-2021 USDA Class C Exhibitor license,

> No person shall have a right of property in, keep, harbor, care for, act as custodian of or maintain in his possession any dangerous animal or primate except at a properly maintained zoological park, federally licensed exhibit, circus, college or university, scientific

---

[34] Doc. #13, p. 12.
[35] Doc. #13, p. 12.
[36] TRO Ex. S.

> institution, research laboratory, veterinary hospital, hound running area, or animal refuge in an escape-proof enclosure.

(720 ILCS 585/1)(from Ch. 8, par. 241).

## IX.    First Amendment

Defendants claim that Tranchita's free exercise clause claim cannot succeed on its merits because, inter alia, she has failed to "specify[ ] what religion hound running allegedly violates."[37] According to the Seventh Circuit,

> A cornerstone of our Religion Clauses jurisprudence is the right of each individual to define personal religious beliefs not according to institutional norms but according to *personal* religious commitments. * * * [I]f an individual sincerely holds those beliefs, the Religion Clauses protect them.

*St. Augustine Sch. v. Evers*, 906 F.3d 591, 604-05 (7th Cir. 2018) (internal citation omitted).

Tranchita is not required to specify her religion.  Moreover, it is not in the best interest of the public that Tranchita be compelled to act in conflict with her religious belief.  Defendants have neither a compelling reason nor a rational basis to require only Tranchita to hold the Hound Running Area permit.  Plaintiff has shown that abiding by the mandate will substantially burden her exercise of religion.  The practice of hound running is morally and religiously objectionable to Tranchita, and to require her to hold a permit is also morally and religious reprehensible.  The requirement that Tranchita hold a Hound Running Area permit is analogous to requiring a Hindu, who believes cows are sacred, to apply and hold a cow slaughter license as a condition to be able to keep cows.

DATE:  November 2, 2020                                Respectfully submitted,

                                                       /s/ Richard Rosenthal
                                                       RICHARD BRUCE ROSENTHAL
                                                       (NY Reg. No. 1637677)

---

[37] Doc. #13, p. 11

545 E. Jericho Turnpike
Huntington Station, New York 11746
Ph:  631-629-8111
Email:  Richard@thedoglawyer.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on November 2, 2020, I caused a copy of the foregoing *Reply to Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction* to be filed electronically on CM/ECF, which will cause a notice of filing to be sent to all counsel of record who have entered appearances.

/s/ Richard Rosenthal
RICHARD BRUCE ROSENTHAL

16