**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TOMI TRANCHITA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 20-cv-5956 |
| | ) | |
| v. | ) | Hon. Sara L. Ellis |
| | ) | |
| KWAME RAOUL, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Defendants Colleen Callahan, John Fischer, and Sergeant Joshua Mooi by their attorney, Kwame Raoul, Attorney General of Illinois, in support of their Motion to Dismiss Plaintiff's Second Amended Complaint state as follows:

**INTRODUCTION**

Plaintiff alleges that she raised several coyotes at her home from 2006 until April 24, 2019. ECF No. 51 at ¶¶ 10-14. Plaintiff alleges that in 2012 an employee of the Illinois Department of Natural Resources ("IDNR") told her that, pursuant to 520 ILCS 5/3.25, she only needed to possess a fur bearing mammal breeder permit ("Breeder Permit") to house the coyotes in compliance with state law. *Id.* ¶ 28. Based on this belief, Plaintiff held Breeder Permits from 2011 through 2016. *Id.* ¶ 160. Plaintiff did not obtain a Breeder Permit when her 2015-2016 Breeder Permit expired on March 31, 2016. *Id.* ¶ 161. On April 24, 2019, after learning that Plaintiff had coyotes on her residential property without holding any state permits, Defendant Sergeant Mooi and other IDNR officers executed a search warrant at Plaintiff's home and removed four coyotes, including Luna, from the property. *Id.* ¶ 72. Plaintiff pled guilty to possessing the coyotes without proper permits in September 2019. *Id.* ¶ 140.

1

After the coyotes were removed from Plaintiff's residence, she sued in state court. *Id.* ¶ 190. Plaintiff also filed an emergency motion for preliminary injunctive relief in state court seeking to have Luna returned to her; the injunction was denied by the state circuit and appellate courts. *Id.* ¶¶ 191, 193, 198. Prior to April 2019, Plaintiff operated under the erroneous belief that she only needed a Breeder Permit to possess a coyote in Illinois. *See generally id*. However, the Wildlife Code, 520 ILCS 5/1 *et seq*., states that to keep a coyote an individual must have a Breeder Permit *and* a Hound Running Permit. 520 ILCS 5/3.25. Plaintiff alleges that she should not be required to have both the Breeder Permit and the Hound Running Permit to keep Luna in her backyard. *See generally* ECF No. 51. Instead, Plaintiff alleges that she is entitled to keep coyotes on her residential property with only a Breeder Permit. *See id.* After the coyotes were seized, Plaintiff obtained a 2019-2020 Breeder Permit, a 2020-2021 Breeder Permit, and she currently holds a 2021-2022 Breeder Permit. *Id.* ¶ 159. Plaintiff was also erroneously issued a 2019-2020 Hound Running Permit in May 2020 that IDNR revoked when it learned of the mistake. *Id.* ¶ 172. After her 2019-2020 permit was revoked because Plaintiff's property did not satisfy the statutory requirements to operate a Hound Running Area—and could not be altered to satisfy the requirements—Plaintiff applied for, and was mistakenly issued, a 2020-2021 Hound Running Permit. *Id.* ¶ 177. Due to this lawsuit, IDNR did not revoke the erroneously issued 2020-2021 Hound Running Permit. However, that permit expired on March 31, 2021. *Id.* ¶ 180. Plaintiff does not hold a 2021-2022 Hound Running Permit. *Id.* ¶ 184.

Plaintiff filed her Complaint on October 7, 2020, alleging that her constitutional rights were violated by Defendants Colleen Callahan, Director of the IDNR; John Fischer, Legal Counsel for the IDNR; and Sergeant Joshua Mooi of the IDNR Conservation Police, when IDNR seized Luna the coyote. *See* ECF No. 1. Plaintiff also filed a motion for a temporary restraining order on

October 14, 2020, raising many of the same claims. *See* ECF Nos. 5-6. This Court held two hearings on the motion for a temporary restraining order and then ordered the Parties to fully brief the motion. *See* Docket Nos. 11-12. Ultimately, this Court denied Plaintiff's motion for a temporary restraining order. ECF Nos. 20, 28. In its Opinion, this Court found that Plaintiff was unlikely to succeed on the merits of any of her claims. *See* ECF No. 28.

On February 2, 2021, Defendants filed a motion to dismiss Plaintiff's Complaint and supporting memorandum of law. ECF Nos. 30-31. Plaintiff did not respond to the motion to dismiss and instead filed her Amended Complaint. *See* Docket. Defendants moved to dismiss the Amended Complaint (ECF Nos. 37-38); before her response was due, Plaintiff requested, and was granted, leave to file this Second Amended Complaint. ECF Nos. 44, 51. In her Second Amended Complaint, Plaintiff alleges that IDNR's conduct violated the Equal Protection Clause of the Fourteenth Amendment, that Illinois state law is preempted by federal law, that Illinois law violates the Free Exercise Clause of the First Amendment, that IDNR violated her substantive and procedural due process rights under the Fourteenth Amendment, and that Illinois law violates the Illinois Religious Freedom Restoration Act. *See* ECF No. 51. Plaintiff seeks declaratory relief on all claims and, in effect, injunctive relief that would allow Plaintiff to keep Luna on her property with only a Breeder Permit. *Id.* at Prayer for Relief.

While Plaintiff's Second Amended Complaint adds an Illinois Religious Freedom Restoration Act claim and clarifies that her 2021-2022 Breeder Permit is currently active, the changes related to the permits do not alter the underlying legal analysis that was already addressed by the briefing on the motion for temporary restraining order, the Defendants' original motion to dismiss, and Defendants' motion to dismiss the Amended Complaint. As such, the claims in Plaintiff's Second Amended Complaint fail for the same reasons this Court explained in its opinion

denying Plaintiff's Motion for Preliminary Injunction. *See* ECF No. 28. In its thorough and well-reasoned opinion, this Court held that Plaintiff's "class of one" equal protection claim was unlikely to succeed. This Court also found that the Wildlife Code was not preempted by federal law and that the Wildlife Code does not violate Plaintiff's First Amendment right to exercise her religious beliefs or her Fourteenth Amendment substantive or procedural due process rights. Moreover, Plaintiff's new claim under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.*, is barred by the Eleventh Amendment. And even if it were not barred, Plaintiff has failed to state a viable claim under the Religious Freedom Restoration Act. As such, the Court should dismiss Plaintiff's Second Amended Complaint with prejudice.

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." F.R.C.P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." *Id.* at (h)(3).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content, as "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal* 556 U.S. at 678.

4

If, upon its review, the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

## ARGUMENT

### I.     PLAINTIFF DOES NOT PLEAD A VIABLE "CLASS OF ONE" EQUAL PROTECTION CLAIM.

Plaintiff alleges that IDNR violated her rights under the Equal Protection Clause of the Fourteenth Amendment. ECF No. 51 at Count I. Plaintiff alleges that IDNR has only enforced the permit requirements to keep coyotes against her (but not against other individuals and entities who keep coyotes) and that this enforcement is based on irrational and improper reasons. *Id.* ¶¶ 527, 529. However, Plaintiff's has not stated a viable "class of one" equal protection claim.

First, this Court has already held that Plaintiff cannot rely on the alleged selective enforcement of the Wildlife Code to create a "class of one" equal protection claim. ECF No. 28 at 16. Instead, this Court stated that "enforcement of a law, by its nature, is a prosecutorial decision that entails selectivity, *Van Dyke v. Vill. Of Alsip*, 819 F. App'x 431, 432 (7th Cir. 2020), and the government does not violate the Equal Protection Clause simply by enforcing a law against only some of the law's violators." *Id.* at 16-17. (internal quotations omitted).

This Court also held that because IDNR's enforcement of the Wildlife Code, and the Hound Running Permit requirement, is "necessarily selective and discretionary," Plaintiff must show that IDNR's decision was based on invidious discrimination. *Id.* at 17. But Plaintiff has not made any allegation of invidious discrimination. *See* ECF No. 51. Plaintiff's Amended Complaint makes allegations about Defendant Mooi being rude or "heavy-handed" during the search and conclusory allegations that IDNR did not have a rational basis to enforce the Wildlife Code. *See id.* Plaintiff's allegations that Defendant Mooi was rude do not amount to a viable claim that IDNR's decision to enforce the Wildlife Code was based on invidious discrimination. Further, as this Court has

already held, IDNR had a rational basis for enforcing the Hound Running Permit requirement. ECF No. 28 at 18.

Moreover, even if Plaintiff could rely on IDNR's allegedly selective enforcement of the Wildlife Code to plead a "class of one" equal protection claim, her claim is still not viable. A "class of one" equal protection claim may be brought where "(1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004).

To satisfy the first element, Plaintiff must show that IDNR did not enforce the Hound Running Permit requirement against other similarly situated individuals. *See McDonald*, 371 F.3d at 1001. Plaintiff references a man that IDNR allegedly allowed to renew his lapsed Breeder Permit without seizing the man's red fox. *Id.* at ¶ 133. But Plaintiff and this alleged individual are not similarly situated, as a red fox is not subject to the coyote-specific restrictions of Section 5/3.25 of the Wildlife Code. Plaintiff also attempts to bolster her "class of one" equal protection claim with pages of allegations regarding wildlife sanctuaries and zoos—and the owners or managers of those entities—that IDNR has allegedly allowed to keep coyotes without the required permits. *See* ECF No. 51 at 44-57.

However, these conclusory allegations are not sufficient to allege a "class of one" equal protection claim. As the Seventh Circuit has observed: "saying the magic words is not enough: [Plaintiffs] must offer 'further factual enhancement.'" *Charleston v. Bd. of Trustees of Univ. of Illinois at Chicago*, 741 F.3d 769, 775 (7th Cir. 2013), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (affirming dismissal of equal protection claim where plaintiff alleged in his complaint

only that unnamed "similarly situated" individuals were treated differently); *see also Muczynski v. Lieblick*, No. 10-CV-0081, 2010 WL 3328203, at *3 (N.D. Ill. Aug. 19, 2010) (dismissing equal protection claim in part because conclusory allegations of similarly situated individuals were insufficient); *Despard v. Bd. of Trustees of Indiana Univ.*, No. 1:14-CV-1987, 2015 WL 4946112, at *7 (S.D. Ind. Aug. 18, 2015) ("[T]o survive a motion to dismiss, the Plaintiff needed to allege facts regarding at least one similarly situated comparator.").

While there is not a "precise formula" to determine when individuals are similarly situated, "[i]t is clear that similarly situated individuals must be very similar indeed." *McDonald*, 371 at 1002. Plaintiff tries to compare her situation—keeping coyotes in her backyard—to wildlife sanctuaries and zoos. But this comparison is improper because to be similarly situated, Plaintiff would need to show that other individuals had one or more coyotes living in their backyard in a residential neighborhood. Even with the additional allegations in the Second Amended Complaint, Plaintiff has not met this burden. For instance, Plaintiff alleges that she is similarly situated to Treehouse Wildlife Center and Big Run Wolf Ranch because they operate on "residential property." ECF No. 51 at ¶ 370, 417. However, Treehouse Wildlife Center and Big Run Wolf Ranch are clearly not the backyards of residential homes.[1] None of the alleged people or entities Plaintiff tries to compare herself to meet that criteria, and therefore are not similarly situated.

Finally, as discussed above, Plaintiff has not alleged that she was subject to invidious discrimination, and this Court has already held that IDNR had a rational basis for enforcing the

---

[1]    *See*    http://treehousewildlifecenter.com/facilities    (last visited    June    17,    2021)    and http://bigrunwolfranch.org (last visited June 17, 2021). This Court may take judicial notice of this information and other external sources cited in this brief, as they are public records "not subject to reasonable dispute." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012); *see* Fed. R. Evid. 201(b)(2) (permitting judicial notice of facts "whose accuracy cannot reasonably be questioned"); *see also* Fed. R. Evid. 902(6) (official documents and newspapers are self-authenticating); Fed. R. Evid. 101(b)(6) (rules on printed information apply to electronic sources of information).

Wildlife Code and Hound Running Permit requirement against Plaintiff. As such, Plaintiff has not viably plead any element of a "class of one" equal protection claim and Count I should be dismissed.

## II.    THE WILDLIFE CODE IS NOT PREEMPTED BY FEDERAL LAW.

In Count II, Plaintiff alleges that the Wildlife Code is preempted by the Animal Welfare Act (AWA). ECF No. 51 at Count II. Plaintiff alleges that preemption applies because she cannot comply with both the Wildlife Code and the AWA. *Id.* But there is no conflict between the relevant statutes, and Seventh Circuit case law clearly holds that the AWA does not preempt the Wildlife Code.

As this Court has already found, hound running, as defined by the Wildlife Code, does not fall under the definition of an "animal fighting venture," which is prohibited by the AWA. ECF No. 28 at 20. Because there is no conflict between the statutes, there is no reason that Plaintiff cannot comply with both the Wildlife Code and the AWA. *Id.* at 21. Further, the Seventh Circuit has clearly stated that the AWA does not ban or preempt state legislation that regulates wild animals, such as the Wildlife Code. *Id.* Therefore, Plaintiff has not plead a viable preemption claim and Count II should be dismissed.

## III.    THE WILDLIFE CODE DOES NOT VIOLATE PLAINTIFF'S FIRST AMENDMENT RIGHT TO PRACTICE HER RELIGION.

Plaintiff alleges that the Wildlife Code, specifically the requirement that she must obtain a Hound Running Permit to keep coyotes, infringes upon her First Amendment right to practice her religion. ECF No. 51 at Count III. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the grounds that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes). *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990). As such, "a neutral law of general applicability is constitutional

if it is supported by a rational basis." *Ill. Bible Colls. Ass'n v. Anderson*, 870 F.3d 631, 639 (7th Cir. 2017).

This Court has already held that, even though Plaintiff failed to specifically identify what religious belief is supposedly violated by the Hound Running Permit requirement, she has still alleged that she has a "sincere religious belief" that prohibits her from running hounds. ECF No. 28 at 22-23, *quoting Young v. Lane*, 922 F.2d 370, 374 n.11 (7th Cir. 1991). Even so, Plaintiff has not stated a viable free exercise claim. Plaintiff alleges that the Wildlife Code is overly broad because it infringes upon *her* First Amendment rights. ECF No. 51 at ¶ 563. This Court has already rejected this argument and concluded that "the Hound Running Permit requirement is neutral and generally applicable," because the applicable sections of the Wildlife Code do "not refer to, let alone target, any particular religion, and there is no indication that the object of the Hound Running Permit requirements is to restrict or otherwise influence practices based on their underlying religious motivation." ECF No. 28 at 24 (internal citations omitted).

The next question is whether the Hound Running Permit requirement is rationally related to a legitimate government interest. *Ill. Bible Colls. Ass'n*, 870 F.3d at 639. When ruling on Plaintiff's motion for a temporary restraining order, this Court held that "[t]he Hound Running Permit requirement is rationally related to the government's interest in regulating who can keep coyotes (and where) in that it requires an individual who wants to raise a coyote to do so on at least ten contiguous acres of land, *see* Ill. Admin. Code tit. 17, § 970.40(d)(2), which is likely impossible for an individual who wants to keep coyotes in the city or a suburban housing development." *Id.* at 25. Further, this Court held that:

> It was permissible for Illinois' legislature to conclude that raising coyotes is an
> activity that should be restricted to more rural areas, and it was rational for the
> legislature to implement this restriction by way of the Hound Running Permit

requirement, which requires an amount of land that would likely prevent an individual living in an urban or developed area from keeping a coyote.

*Id.* Therefore, the Wildlife Code and its relevant permit requirements is a neutral law of general applicability that is rationally related to a legitimate government purpose. *Id.* at 24-26. As such, Plaintiff has not pled a viable First Amendment free exercise claim and Count IV should be dismissed accordingly.

## IV. PLAINTIFF HAS NOT PLEAD VIABLE SUBSTANTIVE OR PROCEDURAL DUE PROCESS CLAIMS.

To state a viable substantive or procedural due process claim, Plaintiff must identify a protected liberty or property interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972); *Gen. Auto Serv. Station v. City of Chicago*, 526 F.3d 991, 1002 (7th Cir. 2008). This Court has already held that Plaintiff "does not assert that Defendants have impeded on a protected liberty interest . . . so her due process claims must be grounded in a protected property interest." ECF No. 28 at 27. In Count IV of the Second Amended Complaint, Plaintiff alleges that she has a property interest her Breeder Permit,[2] but she cannot state a viable due process claim related to the Breeder Permit.

### A. *Plaintiff Does Not Have A Property Interest In Her Breeder Permit That Allows Her To Keep Coyotes.*

Plaintiff alleges that her 2021-2022 Breeder Permit gives her a property interest in keeping a coyote. ECF No. 51 ¶ 574. It is unclear from the Amended Complaint if Plaintiff alleges that she also has a property interest in Luna. *See* ECF No. 51. However, his Court has already determined that "[w]hen [Plaintiff's] 2015 Breeder Permit expired in March 2016, however, she relinquished any property interest in Luna that she may have had." ECF No. 28 at 28. Therefore, at all relevant

---

[2] Plaintiff's Amended Complaint does not allege that Plaintiff has any property interest in the erroneously issued 2020-21 Hound Running Permit, and this Court has already found that any substantive or procedural due process claim related to the 2020-21 Hound Running Permit would fail. ECF No. 28 at 35-38.

times, Luna was contraband pursuant to the Wildlife Code, 50 ILCS 5/1.2(c) and, as the state appellate court held, under Illinois law an individual cannot have a protected property interest in contraband. *Id.* at 8; *see also Dufauchard v. Ward*, 51 Ill. App. 2d 42, 46, 200 N.E.2d 833, 835 (1964) (stating that nobody can assert legal ownership or a right to possess contraband). As such, any potential substantive due process claim related to Plaintiff's alleged property interest in Luna is not viable.

Turning to Plaintiff's allegations regarding her 2021-2022 Breeder Permit, Plaintiff's substantive due process claims still fail. Plaintiff alleges that she has a protected property interest in her 2021-2022 Breeder Permit. ECF No. 51 at ¶ 574. The Court has already addressed this issue and determined that having a valid Breeder Permit does not allow Plaintiff to possess a coyote. ECF No. 28 at 34-35. Plaintiff's argument rests on the Illinois Appellate Court's opinion (*see* ECF No. 51 at ¶ 201), but this Court has already explained that "[P]laintiff cannot simply take a variation of the [state appellate court's] holding's inverse proposition—that an individual has a property interest in a coyote if she possesses a Breeder Permit—and declare that to constitute the appellate court's holding." ECF No. 28 at 28 (internal citations omitted). As such, Plaintiff's 2021-2022 Breeder Permit does not create a protected property interest that, on its own, allows Plaintiff to keep a coyote.

Moreover, to the extent that Plaintiff's Amended Complaint can be read to allege that Plaintiff's USDA exhibitor's license in itself gives her a property interest in Luna (*see generally* ECF No. 51), this argument fails. This Court explained that this argument was "squarely rejected" by the Illinois appellate court and, as such, this Court cannot consider this argument without overruling the state appellate court in violation of the *Rooker-Feldman* doctrine. *See* ECF No. 28 at 29 (declining to address the argument based on Plaintiff's assertions that she was not asking the

Court to overrule the state appellate court's decision). However, to the extent that this, or any claim, in Plaintiff's Second Amended Complaint would require this Court to overrule the state appellate court's decision, those claims are barred by the *Rooker-Feldman* doctrine. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005) (explaining that *Rooker-Feldman* applies when a state court loser asks a district court to review and reject state court judgments).

Finally, Plaintiff alleges that she has a right to Luna based on custom, appeal, and the plain language of the statute. ECF No. 51 at ¶ 575. This argument is also wrong. Breeder Permits apply to thirteen different species. *See* 520 ILCS 5/1.2g. Plaintiff relies on her allegation that she had two conversations with IDNR officials in 2012 and 2013 to state a viable claim that "custom or policy" allows Plaintiff to keep coyotes with only a Breeder Permit. ECF No. 51 at ¶¶ 28, 48, 575. This Court has already explained that to establish a property right through a custom or policy "[t]he understanding must be truly mutual" and such understanding "cannot be based on the representations of government officials who are not authorized to make such representations." ECF No. 28 at 33, *quoting Wolf v. City of Fitchburg*, 870 F.2d 1327, 1334 (7th Cir. 1989); s*ee also Daniels v. Williams*, 474 U.S. 327, 330 (1986) ("negligent acts by state officials, though causing loss of property, are not actionable under the Due Process Clause"); *Davidson v. Cannon*, 474 U.S. 344, 347 (1986) ("[T]he lack of due care of an official causing unintended injury to life, liberty or property" does not amount to a due process violation).

As discussed above, Plaintiff cannot use the Illinois appellate court decision to support her position that her Breeder Permit gives her a property interest in Luna. Moreover, the plain language of the statute also contradicts Plaintiff's allegation that having a Breeder Permit gives her a property interest in keeping a coyote and this Court has already found that "nothing in Section 3.25

suggests that an individual can legally possess a coyote in Illinois with only a Breeder Permit."
ECF No. 28 at 32. As such, Plaintiff has failed to state a viable substantive due process claim.

### B. Plaintiff Has Not Stated A Viable Procedural Due Process Claim.

In Count IV, Plaintiff also brings a procedural due process claim alleging that she is, or will be, deprived of the rights provided by her Breeder Permit. ECF No. 51 at Count IV. Plaintiff's procedural due process claim fails because she has not alleged that she has any recognized property right that will, or could, be infringed upon without adequate procedure.

Plaintiff's theory is based on her erroneous belief that having a Breeder Permit entitles her to keep coyotes. *Id.* ¶ 574-75. However, Plaintiff's alleged right to keep coyotes and any procedural due process rights related to Plaintiff's 2021-2022 Breeder Permit are separate issues. This Court has already found that the Breeder Permit itself does not confer the right to keep coyotes. ECF No. 28 at 32. Plaintiff alleges that she will be deprived the benefits of her Breeder Permit, which she asserts is to keep coyotes. ECF No. 51 at Count IV. However, keeping coyotes is not a benefit of the Breeder Permit and Plaintiff does not allege that the permit itself will be revoked without adequate procedural protections. *Id.* As such, she has not made any allegations that support a viable procedural due process claim related to the 2020-2021 or 2021-2022 Breeder Permit.

## V. PLAINTIFF'S RELIGIOUS FREEDOM RESTORATION ACT CLAIM FAILS.

Plaintiff's Second Amended Complaint includes a state-law claim under the Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq.* The Religious Freedom Restoration Act requires that any burden upon a person's exercise of religion must further a compelling governmental interest in the least restrictive means possible. *Id.* at 35/15. Here, Plaintiff's claim fails for two reasons. First, Plaintiff's Religious Freedom Restoration Act claim is barred by the

Eleventh Amendment. Second, even if the claim were not barred, Plaintiff has failed to state a viable claim under the Religious Freedom Restoration Act.

> A.   **Plaintiff's Religious Freedom Restoration Act Claim Is Barred By The Eleventh Amendment.**

The Eleventh Amendment prohibits suits against a state without the state's consent. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Although the Eleventh Amendment does not bar claims for injunctive relief against state officials to stop an ongoing violation of *federal* law, *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), this exception does not extend to allowing claims based on alleged violations of state law. "A federal Court's grant of relief against state officials on the basis of state law … does not vindicate the supreme authority of federal law." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 107 (1964). In holding that the Eleventh Amendment bars suits against state officials to compel them to conform their conduct to state law, the *Pennhurst* Court noted that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.*

The Seventh Circuit recently affirmed this principle in connection with a Religious Freedom Restoration Act claim. *Elim Romanian Pentecostal Church v. Pritzker*, 962 F.3d 341, 345 (7th Cir. 2020). The Seventh Circuit rejected the plaintiffs' argument that Illinois had consented to enforcement of the Religious Freedom Restoration Act, thus waiving its sovereign immunity. *Id*. While the State has consented to be sued in state court, that consent "does not imply consent to be sued in federal court"; such consent "that takes a 'clear declaration." *Id.* (internal citations omitted). Because the Religious Freedom Restoration Act does not "clearly authorize suit against the state in federal court," a plaintiff may not pursue a Religious Freedom Restoration Act claim against a state official in federal court. Id.  at 345-46. Therefore, Plaintiff's

Religious Freedom Restoration Act claim is barred by the Eleventh Amendment and should be dismissed.

### B. Plaintiff Has Failed To State A Viable Claim Under The Religious Freedom Restoration Act.

Even if Plaintiff could bring this claim in federal court, it would fail on its merits. Plaintiff has not alleged that her religious beliefs have been violated. Plaintiff alleges that hound running violates her religious beliefs. ECF No. 51 at 58-59. As this Court has noted, nothing in the Wildlife Code requires that Plaintiff run hounds (ECF No. 26 at n. 11); Plaintiff can continue to not run hounds and uphold her beliefs against hound running. Plaintiff has not alleged that her religious beliefs require that she keeps a coyote on her property. *See* ECF No. 51. This case is similar to *Diggs v. Snyder*, where an inmate brought a Religious Freedom Reformation Act claim after being disciplined for having unauthorized property; correction officers found a pamphlet in his cell that "condemned" all correctional officers or individuals that interfered with the practice of Islam and included a "condemnation pledge." 775 N.D. 2d 40, 42 (Ill. App. 5th Dist.) (Aug. 13, 2002). The Illinois Appellate Court determined that the plaintiff could not state a claim under the Religious Freedom Restoration Act because he did not plead that his religion required him to have the pamphlet or the pledge. As such, the appellate court found that he had not shown that there was a "substantial burden on [his] religious practice." *Diggs*, 775 N.D. 2d at 45. Similarly, Plaintiff has failed to plead that the Wildlife Code has imposed any burden on her ability to exercise her religious beliefs.

Further, Plaintiff has not adequately pled that regulating who may possess wild animals does not relate to a legitimate governmental purpose. Plaintiff's Second Amended Complaint makes self-serving assertions that there is no legitimate interest in regulating who has coyotes (*see generally* ECF No. 51), but this Court has already found that such an interest does exist.

ECF No. 28 at 26-26. Finally, Plaintiff has not pled that there is a less restrictive means of achieving this goal. Again, Plaintiff's threadbare allegations that the current law is not the "least restrictive" means of regulating wild animals does not satisfy the pleading requirements necessary to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice."). As such, Plaintiff's Religious Freedom Restoration Act claim fails and should be dismissed with prejudice.

## VI. PLAINTIFF'S SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE WITHOUT LEAVE TO REPLEAD.

Plaintiff's Second Amended Complaint should be dismissed with prejudice and without leave to amend, because any further amendment would be futile. "Although Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that leave to amend shall be 'freely give[n] . . . when justice so requires" (Fed. R. Civ. P. 15(a)(2)), leave to amend "need not be granted…if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F. 3d 603, 608 (7th Cir. 2013). Plaintiff has had three chances to state a claim, and she has failed to do so each time; yet another complaint will not change that fact. *See Wade v. Hopper*, 993 F.2d 1246, 1249 (7th Cir. 1993) (upholding district court's decision to deny leave to file third amended complaint when amendment would be futile). Plaintiffs' Second Amended Complaint should therefore be dismissed in its entirety without leave to replead.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's claims that Defendants violated her constitutional rights in enforcing the Wildlife Code are not viable.

WHEREFORE, Defendants respectfully request that this Court dismiss Plaintiff's Amended Complaint in its entirety with prejudice.

June 24, 2021                                    Respectfully submitted,

                                                KWAME RAOUL
                                                Attorney General of Illinois

                                                 */s/ Mary A. Johnston*
                                                Mary A. Johnston
                                                Office of the Illinois Attorney General
                                                100 West Randolph Street
                                                Chicago, Illinois 60601
                                                (312) 814-3739

                                                *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 24, 2021, I caused a copy of the foregoing *Defendants' Memorandum in Support of Their Motion to Dismiss Plaintiff's Second Amended Complaint* to be filed electronically on CM/ECF, which will cause a notice of filing to be sent to all counsel of record who have entered appearances.

                                                 */s/ Mary A. Johnston*